UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MCKEON PRODUCTS INC.,                Civil Action No.: 95-76322
                                     Honorable Paul D. Borman
                         Plaintiff   Magistrate Judge Elizabeth A. Stafford

v.

HOWARD S. LEIGHT AND
ASSOCIATES, *et al.*,

                    Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION
TO REOPEN CASE AND ENFORCE THE
COURT'S FINAL JUDGMENT AND PERMANENT
<u>CONSENT ORDER [ECF NO. 32]</u>**

**I.    Introduction**

Plaintiff McKeon Products, Inc., has moved the Court to reopen this

case to enforce a final judgment and consent order against Honeywell

Industrial Safety, the successor in interest to Defendant Howard S. Leight &

Associates, Inc.  [ECF No. 32].[1]  Opposing the motion, Honeywell argues

that it has complied with the consent order and that McKeon's motion to

enforce the consent judgment is barred by the doctrine of laches.  [ECF No.

_____

[1] The Honorable Paul D. Borman referred the motion to the undersigned for
a report and recommendation.  [ECF No. 52].

40].  The Court held a hearing on November 2, 2018.  For the reasons

stated below, the Court recommends that McKeon's motion be granted.

## II.    Background

McKeon states, and Honeywell does not deny, that McKeon has sold

its soft earplugs since the 1960s and received a federal registration for the

"Mack's" mark in 1988.  [ECF No. 32, PageID.11 and n. 2].  After Howard

Leight began selling its "Max" ear plugs, McKeon sued Leight in 1995.  The

parties settled in 1997 with an agreement to enter a "Final Judgment and

Permanent Consent Order Against Howards, Leight & Associates, Inc."

[ECF No. 32-2].  It is undisputed that Honeywell is a successor in interest

and thus bound by the terms of the consent order.

The consent order constituted "a permanent injunction" that would

"remain in full force and effect indefinitely unless modified by court order."

[*Id.*, PageID.30].  Specifically, Leight agreed to cease selling earplugs

under the trademarks of "Max" or "Max Light"[2] in the "Retail Market."  [*Id.*,

PageID.30-31].  The "Retail Market" consisted of "all retail establishments

including the [Drug] and Grocery Market, sporting goods stores and mass

---

[2]Hereinafter, this report and recommendation will use "Max" when referring
to either "Max" or "Max Lite."

2

merchandisers." [*Id.*, PageID.31].  The "Drug and Grocery Market" was

defined as

> retail establishments where medicines and miscellaneous
> articles such as cosmetics, food and film and/or where foods
> stuffs, meats, produce, dairy products and other household
> supplies are the principal products sold as well as any
> distributor or supplier who sells to these markets.  Examples of
> establishments and distributors in the drug and grocery markets
> include, but by no means are limited to, Walgreens, Arbor
> Drugs and McKesson as such parties presently are operating.

[*Id.*].

A primary purpose of the consent order was "to minimize the

likelihood of confusion concerning the parties' respective trademarks" in the

Retail Market.  [*Id.* PageID.32].  Thus, Leight was entitled to sell in the

Retail Market under the name "Maximum," and to sell under the names

"Max" in the "industrial Safety Market and elsewhere, except as expressly

agreed" in the consent order.  [*Id.*, PageID.31-32].   And while Leight was

able to sell "Max" earplugs until December 31, 1998 to "mass

merchandisers" like "K-Mart, WalMart, Target and Meijers," Leight agreed

to not encourage those merchandisers to sell its earplugs in the drug or

grocery sections of stores.  [*Id.*, PageID.32].

Before the consent order was finalized, Leight's then chief executive

officer had denied selling "directly to retail outlets, or to companies who

provide such products to their workers or to ultimate consumers"; he said

3

that Leight sold only to distributors. [ECF No. 32-9, PageID.104-07].  But in

September 2017, Dan Asma of McKeon emailed John Wright of Honeywell

to address direct sales of Max earplugs to consumers on Amazon.com.

[ECF No. 32-3, PageID.35].  The link included in the email leads to an

Amazon webpage that permits a consumer to buy "Howard Leight by

Honeywell MAX Disposable Foam Earplugs" in 5 pair, 100 pair and 200

pair quantities.[3]  Asma alleged that the sales on Amazon violated the

consent order, and he urged Honeywell to "please cease and desist the

use of MAX or MAX LIGHT in the retail market."  [*Id.*].

In an October 25, 2017 letter sent to Asma in response to his

September 2017 email, Joshua Foster of Honeywell denied that it was

violating the consent order and stated that it had not sold "products bearing

the Max and Max Light marks in a manner intended for retail consumer

purchase."  [ECF No. 32-4, PageID.38].  He said that Honeywell sold Max

products "in the industrial safety market only to manufacturing entities,

distributors and resellers in that channel" and did not intend "the sale of

Max or Max Light products directly to consumers for consumption in the

---

[3] https://www.amazon.com/Howard-Leight-Honeywell-Disposable-MAX-1/dp/B0013A0C0Y/ref=pd_day0_121_3/139-0282800-3739301?_encoding=UTF8&pd_rd_i=B0013A0C0Y&pd_rd_r=D008WYW3PNZNR6XE03JZ&pd_rd_w=t3q8B&pd_rd_wg=XlrJ0&psc=1&refRID=D008WYW3PNZNR6XE03JZ (last visited on November 11, 2018).

retail market." [*Id.*].  Foster asserted that Honeywell's earplugs were packaged and sold in 100 to 500 pair quantities in a manner that "is inappropriate for retail consumer sales and very much different from the packaging of our retail products." [*Id.*].  He attached photos of 100 and 200 pair industrial box versions of Max earplugs, 200 and 500 pair industrial dispensers of the earplugs, and an industrial vending machine used to sell the earplugs. [*Id.*, PageID.39-40].  Foster assured Asma, "Following the issuance of, and in compliance with, the Consent Order, we ceased using the Max and Max Lite marks in our packaging of any products intended for retail consumer purchase, including shooting ports and retail, and instead began using trademarks Leight, Super Leight and Honeywell." [*Id.*, PageID.38].  It was "[f]or these reasons" that Honeywell has "not violated the Consent Order." [*Id.*].

In November 2017, McKeon's attorney, J. Michael Huget, responded to Foster's letter by stating that it did not matter how MAX earplugs were packaged; Honeywell's sale of its earplugs "on Amazon, arguably the leading internet retail marketplace" was the problem. [ECF No. 32-5, PageID.42].  Huget reported that McKeon had discovered that Max products were also sold on Walmart's website, and he attached copies of

Walmart and Amazon webpages showing Max earplugs being sold in 20, 50 and 100 pair quantities. [*Id.*, PageID.42-59].

With no resolution of the dispute, McKeon filed its motion to enforce the consent order in March 2018. In its response, Honeywell relies in part on a declaration from Deborah J. Gendreau-Flynn, a Honeywell sales leader, who not only admitted to selling Max earplugs through online retailers but asserted that "Leight MAX® earplugs have been sold through online websites for years." [ECF No. 42-2, PageID.220].[4] A third party sold Max earplugs on Amazon as early as 2004 and Honeywell's predecessor began selling the earplugs on Amazon in 2009. [*Id.,* PageID.220 and n. 1]. Since acquiring Leight, "Honeywell has made online sales a focus of its marketing and distribution strategies." [*Id.*, PageID.222].

Prior to the hearing, McKeon filed a supplemental brief stating that it discovered in October 2018 that visitors searching for "Mack's earplugs" on Amazon received a "headline search ad" that featured Honeywell's Max earplugs. [ECF No. 55]. McKeon accuses Honeywell of selecting the "Mack's" mark as a keyword to trigger the display of the Max earplugs headline search ad. [*Id.*]. Honeywell's national sales manager responded

---

[4] This version of the declaration is sealed. The unsealed copy is on the record at ECF No. 41-2].

with a declaration stating that it implemented a campaign in September and October 2018 to display its headline search ad whenever someone searched for "earplugs," and did not use "Mack's" trademark to trigger the ad.  [ECF No. 57].

McKeon does not dispute Honeywell's allegations that Max earplugs have been sold on Amazon and other online stores for ten or more years, but it states that McKeon's Chief Executive Officer did not know about those sales until September 2017. [ECF No. 32-7; ECF No. 44, PageID.243].

### III.   Analysis

### A.

In its motion, McKeon asks the Court to enforce the consent order by ordering Honeywell to immediately discontinue its violative sales through online retailers, to award McKeon costs and attorney's fees, and to grant McKeon any additional relief deemed equitable and just.  But at the hearing, McKeon did not identify authority that would allow the Court to award costs and attorney's fees, and its focus was on its request to enforce the permanent injunction in the consent order.

Honeywell does not object to this Court's jurisdiction to enforce the consent order, and any objection would have been without merit.  The

consent order indicated that the Court retained the jurisdiction to enforce its terms.  [ECF No. 32-2, PageID.32].  And as a matter of law, the district court retains jurisdiction to enforce such a settlement agreement so as "to preserve the position for which the parties bargained." *Grand Traverse Band of Ottawa & Chippewa Indians v. Dir., Michigan Dep't of Nat. Res.*, 141 F.3d 635, 641 (6th Cir. 1998) (citation and internal quotation marks omitted).

Rather than objecting to this Court's jurisdiction, Honeywell argues that the consent order did not cover internet sales and that McKeon's motion is barred by the doctrine of laches.  Honeywell also asserts that discovery and an evidentiary hearing are necessary to resolve McKeon's motion if the Court finds the consent order to be ambiguous and to determine the extent to which Honeywell has sold Max earplugs in the online market.  But as a factual matter, there is no dispute that Honeywell has sold Max earplugs on Amazon.com and Walmart.com, packaged in quantities as low as 5 pair, and that its earplugs have been sold on Amazon since 2004; neither discovery nor an evidentiary hearing is necessary for the Court to consider those facts.

Instead, the questions before the Court are whether those sales violated the consent order and whether the doctrine of laches precludes

8

McKeon for enforcing to consent order to preclude Honeywell from continuing to sell earplugs through the online markets.  And because a consent order is interpreted as a contract, as explained below, evidentiary development of those questions is only necessary if the consent order is ambiguous.  The Court finds that the order is not ambiguous and that an evidentiary hearing is therefore not warranted.

**B.**

The Sixth Circuit has described a consent decree as "a strange hybrid in the law" in that "it is both a contract that has been negotiated by the parties and a court order which can be altered by a court if circumstances warrant." *Dotson v. U.S. Dep't of Hous. & Urban Dev.*, 731 F.2d 313, 318 (6th Cir. 1984).  The court must therefore consider the "four corners" of the consent order to determine "the legal constraints which govern the behavior of the parties during the life of the decree," and it may depart from the four corners only if the language of the order is ambiguous. *Id.* A determination of whether a contract is ambiguous also must be made by reference to the four corners of the agreement.  "Courts may not . . . use extrinsic evidence to create an ambiguity. Rather, the ambiguity must be patent; that is, apparent on the face of the contract." *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996).

9

Honeywell argues that the consent order bars it "from selling Leight MAX® earplugs to two defined categories of retail *establishments*, a term that refers to physical stores, not Internet portals."  [ECF No. 40, PageID.150 (emphasis in original).  But nothing in the consent order defines establishments as physical stores; Honeywell relies on alleged extrinsic evidence outside of the four corners of the agreement for this narrow interpretation.  Aside from the fact that the Court is not permitted to consider Honeywell's extrinsic evidence to decide whether the consent order is ambiguous, *Schachne*r, 77 F.3d at 893, none of Honeywell's alleged evidence is persuasive.

Honeywell cites the Merriam-Webster definition of defining an "establishment" as "a place of business or residence **with its furnishings** and staff."  [*Id.* (emphasis in original).  But the definition of "establishment" provided by the online dictionary Honeywell cites defines the word broadly as "something established" and the reference to a business with furnishings is included as one example of an establishment, not as its definition.[5] Honeywell then describes caselaw that described the term "establishment" as referring to a physical structure or that differentiated between physical

---

[5] https://www.merriam-webster.com/dictionary/establishment (last visited on November 11, 2018).

businesses and online retail stores.  [*Id.*, PageID.151-53].  But those opinions did not actually hold that an "establishment" refers only to a physical structure or that an online retailer is excluded from the definition of that term.

For example, Honeywell cites the analysis of *Checkpoint Sys., Inc. v. Check Point Software Techs, Inc.,* 104 F. Supp. 2d 427 (D.N.J. 2000), as being particularly insightful in addressing the "physical-establishment-versus-Internet-sales distinction."  [ECF No. 40, PageID.153].  But that opinion did not hold that there is a distinction between online and in-store retail sales; it held that the two companies at issue did not compete with one another.  "They do not directly compete with each other, for they operate in completely different segments of the broad business of corporate security: in the dominant sweep of their respective spheres, plaintiff focuses on protecting physical assets while defendant focuses on protecting the flow of electronic information."   *Checkpoint Sys., Inc.,* 104 F.Supp. at 445.  In contrast, Honeywell is asserting that it has the right to compete directly with McKeon in the online retail marketplace.

Honeywell also cites the fact that the United States Patent and Trademark Office added "on-line retail store services" as new class of

advertising in business in 1997, but there is no reference to the term "establishment" in the description.[6]

In addition to arguing that the term "establishment" excluded online sales, Honeywell emphasizes the portions of the consent order that refer to "stores" and the portion of agreement stating that Leight maintained the right to sell in the "industrial Safety Market *and elsewhere*, except as expressly agreed" in the consent order." [ECF No. 40, PageID.151, 155, quoting ECF No. 32-2, PageID.31-32 (emphasis added)].  The Courts finds Honeywell's argument to be both unconvincing and disingenuous.

Honeywell's argument is unconvincing because the consent order plainly forbids it from selling Max earplugs in the retail market with the express intent "to minimize the likelihood of confusion concerning the parties' respective trademarks" in the Retail Market.  [ECF No. 32-2, PageID.32].  The "Retail Market" consisted of retail establishments, including "mass merchandisers."  [*Id.*, PageID.31].  Honeywell misrepresents the language of the consent order by stating that it referred to "mass merchandiser 'stores,'" [ECF No. 40, PageID.154], but the phrase used in the order is "mass merchandisers," and the examples given were of

[6] https://idm-tmng.uspto.gov/modules/viewRecordPrint.html?referrer=public&recordId=22081 (last visited on November 11, 2018).

corporate bodies—"K-Mart, WalMart, Target and Meijers." [ECF No. 32-2, PageID.32].  None of these mass merchandisers can be described as mere brick-and-mortar stores, and no one can honestly challenge the fact that Amazon.com and Walmart.com are mass merchandisers too. And in fact Honeywell is selling Max earplugs on Walmart.com even though Walmart is specifically referenced as a mass merchandiser in the consent order.  It is also beyond dispute that Amazon.com and Walmart.com sell cosmetics and household supplies, bringing them within the definition of "Drug and Grocery Market," and thus within the definition of "Retail Market" set forth in the consent order.  [ECF No. 32-2, PageID.30-31].

Under the plain language of the consent order, Honeywell can sell Max earplugs in the "Industrial Safety Market and elsewhere, *except as expressly agreed*" in the consent order—and the parties *expressly agreed* that Leight could not sell Max earplugs in the retail market.  [*Id.*, PageID.31-32 (emphasis added)].  At the hearing, McKeon stated that the "or elsewhere" means that Honeywell can supply Max earplugs for auditory testing, to airlines, to hotels—to any market other than the retail market. The Court agrees with McKeon's interpretation and finds Honeywell's claim that the four corners of the consent order exclude online sales from the "Retail Market" to be unpersuasive.

Honeywell's argument is also disingenuous; it knows full well that the consent order prohibits it from selling Max earplugs through online retail sites.  In his October 2017 letter, Joshua Foster of Honeywell did not assert that online retail sales were not covered by the consent order.  Instead, he falsely stated Honeywell did not sell "products bearing the Max and Max Light marks in a manner intended for retail consumer purchase" and did not intend "the sale of Max or Max Light products directly to consumers for consumption in the retail market."  [ECF No. 32-4, PageID.38].  Foster said that Honeywell sold Max products "in the industrial safety market only to manufacturing entities, distributors and resellers in that channel."  [*Id.*].  He asserted that Honeywell's earplugs were packaged in a manner that "is inappropriate for retail consumer sales and very much different from the packaging of our retail products," and he attached photos that he represented as depicting the only manners in which Honeywell sold Max earplugs.  [*Id.*, PageID.39-40].  Foster assured Asma that Honeywell had "ceased using the Max and Max Lite marks in our packaging of any products intended for retail consumer purchase, including shooting ports and retail, and instead began using trademarks Leight, Super Leight and Honeywell."  [*Id.*, PageID.38].   He concluded that it was "[f]or these reasons" that Honeywell had "not violated the Consent Order."  [*Id.*].

14

Now Honeywell proclaims that those are not the reasons at all.  In direct contradiction to Foster's letter, Honeywell admits that it sells Max earplugs directly in the online retail market, that it has done so for years, and that those online sales are in fact the focus of its marketing strategy. [ECF No. 41-2].  Now Honeywell asserts that the reason that it has not violated the consent order is because the order actually permits the sale of Max earplugs through the online retail market.  To better capture that market, Honeywell even implemented a campaign to trigger a headline search ad any time that someone searched for "earplugs" on Amazon. [ECF No. 57].  In its responsive brief, Honeywell describes the history of this case from the 1990s to "recent events," but it conveniently omits any mention of the letter that Foster sent to Asma in October 2017 assuring McKeon that Honeywell did not sell Max earplugs directly to consumers and concluding that Honeywell was not in breach of the consent order for that reason.  [ECF No. 32-4, PageID.38; ECF No. 40, PageID.145-49].

Honeywell provides no explanation for its shifting representations both as to its sales to consumers in the retail market or its reasoning for why it is not in breach of the consent order. Its current explanation for why it has not violated the consent order is unpersuasive and disingenuous, and should not be credited.  Honeywell is violating the order, and it knows it.

## C.

Honeywell next argues that, because McKeon failed to enforce the
online sale of Max earplugs for ten or more years, it is barred by the
doctrine of laches from enforcing the consent order now.

Laches is the "negligent and unintentional failure to protect one's
rights." *Natron Corp. v. STMicroelectronics, In*c., 305 F.3d 397, 408 (6th
Cir. 2002) (citation and internal quotation marks omitted).  A party asserting
laches must show: (1) a lack of diligence by the opposing party; and (2)
prejudice to the asserting party.  *Id.*  A delay beyond three-years (the
statutory period for bringing a trademark infringement claim) is
presumptively prejudicial and unreasonable.  *Id.;* M.C.L. § 600.5805(8).
The period of delay begins when plaintiff has "actual or constructive
knowledge of the alleged infringing action."  *Natron Corp.,* 305 F.3d 397 at
408 (citation and internal quotation marks omitted).

If McKeon were seeking damages, that portion of its claim could very
well have been barred by the doctrine of laches. But courts within the Sixth
Circuit have repeatedly held that laches "does not bar injunctive relief."
*Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (6th Cir. 2000).  *See also
Natron Corp.,* 305 F.3d 397 at 408 (laches "does not prevent plaintiff from
obtaining injunctive relief"); *Wigs for Kids, Inc. v. Wigs 4 Kids of Michigan,*

16

*Inc.,* No. 17-11471, 2017 WL 6539271, at *7 (E.D. Mich. Dec. 21, 2017) (the doctrine of laches "would only defend against any claims for damages, not injunctive relief."); *Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 1003 (W.D. Ky. 2017) (laches is inapplicable when a plaintiff seeks only injunctive relief).  To defeat a claim for injunctive relief, a defendant must prove estoppel, which "requires more than a showing of mere silence on the part of the plaintiff; defendant must show that it had been misled by plaintiff through actual misrepresentations, affirmative acts of misconduct, intentional misleading silence, or conduct amounting to virtual abandonment of the trademark."  *Kellogg Co.,* 209 F.3d at 574 (citation and internal quotation marks omitted).  Honeywell has not tried to prove estoppel here, and the evidence before the Court does not establish that McKeon actively misled Honeywell or abandoned its trademark.

Honeywell argues that the ordinary rule that the doctrine of laches does not bar injunctive relief does not apply to a motion to enforce a consent decree like the one at issue here. It cites *Bergmann v. Michigan State Transp. Comm'n*, 665 F.3d 681 (6th Cir. 2011), as holding that the doctrine of laches barred the enforcement of a consent decree.  In *Bergmann*, the court held that the trial court erred by applying the statute of limitations rather than the equitable doctrine of laches to a motion to

17

enforce a consent decree.  *Id.* at 683-84.  But the *Bergmann* court reversed the district court's award of damages to the plaintiff, not an award of injunctive relief; the court's analysis made no mention of injunctive relief at all.  *Id.* at 682-84.  And in contrast to this case, there is no indication in *Bergmann* that the consent decree at issue included a permanent injunction.

In contrast, in *Ford Motor Co. v. Powerflow, Inc.*, No. 86-74100, 2006 WL 2193802, at *7 (E.D. Mich. Aug. 2, 2006), the court did consider a motion to enforce a consent judgment that included a permanent injunction, and it still applied the general rule in the Sixth Circuit that "laches only bars damages that occurred before the filing date of the lawsuit; it does not foreclose a plaintiff's right to injunctive relief and post-filing damages."  *Id.* And, as noted, the Court has the authority "to preserve the position for which the parties bargained," *Grand Traverse Band of Ottawa & Chippewa Indians,* 141 F.3d at 641, and to determine "the legal constraints which govern the behavior of the parties during the life of the decree," *Dotson,* 731 F.2d at 318.  The consent order here *permanently* enjoined Honeywell from selling Max earplugs in the retail market; that is the position for which the parties bargained.

Honeywell's provides no authority for the proposition that the ordinary Sixth Circuit rules regarding the doctrine of laches do not apply to a motion to enforce the consent order and permanent injunction at issue here.  The Court should enforce permanent injunction order Honeywell to cease selling Max earplugs through the online retail market.

## IV.    Conclusion

The Court **RECOMMENDS** that McKeon's motion to reopen this case to enforce the final judgment and consent order against Honeywell **[ECF No. 32]** be **GRANTED,** and that Honeywell be **ORDERED** to cease selling Max and Max-Lite earplugs through the online retail market pursuant to the permanent injunction.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: November 13, 2018

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 13, 2018.

s/Marlena Williams____
MARLENA WILLIAMS
Case Manager