UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MCKEON PRODUCTS, INC.,

      Plaintiff,

v.

HOWARD S. LEIGHT AND
ASSOCIATES, INC., et al.

      Defendants.
_____/

Case No. 95-cv-76322

Paul D. Borman
United States District Judge

Elizabeth A. Stafford
United States Magistrate Judge

ORDER (1) VACATING MAGISTRATE JUDGE STAFFORD'S
NOVEMBER 13, 2018 REPORT AND RECOMMENDATION (ECF NO. 58),
(2) DENYING AS MOOT DEFENDANT'S OBJECTIONS (ECF NO. 62),
(3) DENYING AS MOOT MOTION FOR LEAVE TO FILE DECLARATION OF
KARRIE LARKIN IN SUPPORT OF OBJECTIONS (ECF NO. 61),
and (4) RECOMMITTING THE MATTER TO THE MAGISTRATE JUDGE
FOR CLARIFICATION AND REVISED REPORT AND RECOMMENDATION

On November 13, 2018, Magistrate Judge Elizabeth A. Stafford issued a Report and Recommendation to Grant Plaintiff's Motion to Reopen Case and Enforce the Court's Final Judgment and Permanent Consent Order. (ECF No. 58.) Defendant Howard S. Leight and Associates, Inc. ("Honeywell") filed Objections to the Magistrate Judge's Report and Recommendation that are presently before this Court. (ECF No. 62, Honeywell's Objections to November 13, 2018 Report and Recommendation.) Honeywell argues in part that the Magistrate Judge, although

1

finding the Consent Order *not* ambiguous, impermissibly considered extrinsic evidence and failed to conduct an evidentiary hearing. Plaintiff McKeon Products, Inc. ("McKeon") filed a Response to the Objections (ECF No. 65), and Honeywell filed a Reply (ECF No. 66.) Honeywell also filed a Motion for Leave to File Declaration of Korrie Larkin as Additional Evidence in Support of Honeywell's Objections to Report and Recommendation (ECF No. 61), which the Court DENIES AS MOOT in light of the Court's resolution of Honeywell's Objections.

Having carefully reviewed the Report and Recommendation, the transcript of the November 2, 2018 hearing on the motion, the briefing on the Objections, as well as the underlying briefing on the motion to enforce Consent Order, the Court will recommit the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). The Magistrate Judge expressly stated in her Report and Recommendation that the terms of the Consent Order were unambiguous and therefore she determined there was no need to consider extrinsic evidence or to hold an evidentiary hearing. Throughout the course of her analysis, however, the Magistrate Judge referenced many items of extrinsic evidence and it is difficult to discern from her analysis whether her consideration of such evidence was a factor in her resolution of the motion. Accordingly, the Court RECOMMITS this matter to the Magistrate Judge for further proceedings and issuance of a revised Report and Recommendation, taking into

consideration the following interpretive guidelines.

"When a party to a consent decree is injured by the violation of the consent decree, the injured party must ask the court for an equitable remedy. In enforcing a consent decree [a] federal court has broad equitable remedial powers and [t]he court's choice of remedies is reviewed for an abuse of discretion." *Shy v. Navistar Intern. Corp.*, 701 F.3d 523, 532-33 (6th Cir. 2012) (internal quotation marks and citations omitted). A court issuing a consent decree is required to "'1) retain jurisdiction over the decree during the term of its existence; 2) protect the integrity of the decree with its contempt powers; and 3) modify the decree should 'changed circumstances' subvert its intended purpose.'" *Waste Mgt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1145-46 (6th Cir. 1997) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)).

When interpreting a consent decree as written, the Court must focus solely on the language of the consent decree itself. In *Shy* the Sixth Circuit explained:

> The Supreme Court has noted that "consent decrees bear some of the earmarks of judgments entered after litigation" and that "[a]t the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986). It is this resemblance to contracts that requires that the scope of a consent decree "be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to" the consent decree. *United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971). Therefore,

> while Navistar's argument that the parties' original intent was to permanently reduce Navistar's retiree healthcare costs might be relevant in a motion to modify the consent decree, the interpretation of the consent decree as written should focus only within the four corners of the consent decree.

701 F.3d at 530. *See also U.S. Filter/JWI, Inc. v. J-Parts, LLC*, No. 16-cv-14, 2017 WL 3574785, at *2 (W.D. Mich. Aug. 18, 2017) (observing that "*the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it*") (quoting *Armour,* 402 U.S. at 681 and citing *Shy*, 701 F.3d at 530) (emphasis in original); *Bauman v. City of Cleveland*, No. 04-cv-1757, 2015 WL 893285, at *3 (N.D. Ohio March 3, 2015) (observing that "interpreting a consent decree as written requires that the Court focus on its four corners and not the purposes of one of the parties in coming to an agreement that is represented in a Consent Decree," and declining to consider evidence regarding the parties' "original purposes") (citing *Armour*, 402 U.S. at 682 and *Shy*, 701 F.3d at 530). Only "[i]f the language of the decree is ambiguous [may] the court's interpretation [] depart from the four corners." *Dotson v. HUD*, 731 F.2d 313, 318 (6th Cir. 1984). Consulting a dictionary when endeavoring to determine the "plain and ordinary meaning" of words used in a contract is not considered an impermissible resort to extrinsic evidence. "To determine a provision's plain and ordinary meaning, courts may resort to a dictionary such as Webster's[.]" *SEE, Inc.*

*v. See Concept SAS*, No. 16-cv-13261, 2017 WL 768616, at *4 (E.D. Mich. Feb. 28, 2017) (internal quotation marks and citation omitted); *Travelers Cas. And Sur. Co. of America v. U.S.*, 75 Fed. Cl. 696, 708-09 (Fed. Cl. 2007) (observing that "use of dictionaries as interpretive aids (e.g., "lexicography") is not considered "extrinsic" aids the use of which violates the plain meaning doctrine.").

In response to Honeywell's Objections, McKeon cites *Dotson*, *supra*, and *Brown v. Neeb*, 644 F.2d 551, 561-62 (6th Cir. 1981), for the proposition that a court interpreting a consent decree may consider "the circumstances surrounding the formation" of the decree, suggesting that the Court is free to examine evidence outside the four corners of a consent decree to determine the parties' "purpose" in entering into the decree. (Resp. to Objs. 8, PgID 561.) However, in *Dotson*, the court expressly found that the "four corners of the [] decree did not provide explicit guidance on the intent of the parties." 731 F.2d at 318. Only after finding ambiguity did the court "go beyond the language of the [] decree to ascertain the parties' intent." *Id*. Regarding *Neeb*, the language which McKeon quotes is excerpted from that section of the court's analysis discussing *modification* of a consent decree, which "of course would require a complete hearing and findings of fact." *Neeb*, 644 F.2d at 560. While modification of a consent decree is certainly a tool that the Court possesses, here the Magistrate Judge did not purport to modify the Consent Order, and expressly

5

stated that she found the Consent Order to be unambiguous. Thus, if in fact she found the Consent Order to be unambiguous, she necessarily would have been required to confine her analysis to the four corners of that document. *See Shy* and *Armour*, *supra*.

It is unclear to this Court, having considered the Report and Recommendation and related materials, whether the Magistrate Judge did confine her analysis to the four corners of the Consent Order. Thus, the Court finds it necessary to recommit the matter to the Magistrate Judge to allow her to clarify whether in fact she found the Consent Order to be unambiguous and thus capable of interpretation squarely with reference to the language of the Consent Order or whether her interpretation in fact required her to "depart from the four corners" of the Consent Order and, if so, whether she must conduct an evidentiary hearing.

The Magistrate Judge is requested to: (1) clarify whether her recommendation is based only on an "interpretation of the [Consent Order] as written [] focus[ing] only within the four corners of the [Consent Order]," in which case the Magistrate Judge must prepare an amended Report and Recommendation providing an analysis that clearly demonstrates that she has not relied on extrinsic evidence; or (2) if on reconsidering the matter her interpretation in fact required her to depart from the four corners of the Consent Order, she must determine whether an evidentiary hearing is

required and must prepare an amended Report and Recommendation providing an analysis that clearly identifies the extrinsic evidence on which she relies in reaching her conclusions.

Accordingly, the Report and Recommendation is VACATED, Defendant's Objections are DENIED AS MOOT, Defendant's Motion for Leave to File Declaration of Korrie Larkin is DENIED AS MOOT, and the matter recommitted to the Magistrate Judge for further proceedings consistent with this Order.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: May 22, 2019