UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MCKEON PRODUCTS INC., | Civil Action No.: 95-76322 |
| | Honorable Paul D. Borman |
| Plaintiff | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| HOWARD S. LEIGHT AND ASSOCIATES, *et al.*, | |
| Defendants. | |

_____/

**AMENDED
REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION
TO REOPEN CASE AND ENFORCE THE
COURT'S FINAL JUDGMENT AND PERMANENT
<u>CONSENT ORDER [ECF NO. 32]</u>**

## I.    Introduction

Plaintiff McKeon Products, Inc., moved the Court to reopen this case to enforce a final judgment and consent order against Honeywell Industrial Safety, the successor in interest to Defendant Howard S. Leight & Associates, Inc. [ECF No. 32]. Opposing the motion, Honeywell argues that it has complied with the consent order and that McKeon's motion to enforce the consent judgment is barred by the doctrine of laches. [ECF No. 40]. The Court held a hearing and issued a report and recommendation that the motion be granted in November 2018. [ECF No. 58]. The

Honorable Paul D. Borman, who referred the motion to the undersigned for a report and recommendation, vacated the report and recommendation, and ordered this Court to clarify whether the consent order was unambiguous. [ECF No. 52]. For the reasons stated below, the Court clarifies that it does find the consent order to be unambiguous and again recommends that McKeon's motion be granted.

## II. Background

McKeon states, and Honeywell does not deny, that McKeon has sold its soft earplugs since the 1960s and received a federal registration for the "Mack's" mark in 1988. [ECF No. 32, PageID.11 and n.2]. After Howard Leight began selling its "Max" ear plugs, McKeon sued Leight in 1995. The parties settled in 1997 with an agreement to enter a "Final Judgment and Permanent Consent Order Against Howards, Leight & Associates, Inc." [ECF No. 32-2]. It is undisputed that Honeywell is a successor in interest and thus bound by the terms of the consent order.

The consent order constituted "a permanent injunction" that would "remain in full force and effect indefinitely unless modified by court order." [*Id.*, PageID.30]. Specifically, Leight agreed to cease selling earplugs

under the trademarks of "Max" or "Max Light"[1] in the "Retail Market."  [*Id.*, PageID.30-31].  The "Retail Market" consisted of "all retail establishments including the [Drug] and Grocery Market, sporting goods stores and mass merchandisers."  [*Id.*, PageID.31].  The "Drug and Grocery Market" was defined as

> retail establishments where medicines and miscellaneous articles such as cosmetics, food and film and/or where foods stuffs, meats, produce, dairy products and other household supplies are the principal products sold as well as any distributor or supplier who sells to these markets.  Examples of establishments and distributors in the drug and grocery markets include, but by no means are limited to, Walgreens, Arbor Drugs and McKesson as such parties presently are operating.

[*Id.*].

A primary purpose of the consent order was "to minimize the likelihood of confusion concerning the parties' respective trademarks" in the Retail Market.  [*Id.* PageID.32].  Thus, Leight was entitled to sell in the Retail Market under the name "Maximum," and to sell under the names "Max" in the "industrial Safety Market and elsewhere, except as expressly agreed" in the consent order.  [*Id.*, PageID.31-32].  And while Leight was able to sell "Max" earplugs until December 31, 1998 to "mass merchandisers" like "K-Mart, WalMart, Target and Meijers," Leight agreed

---

[1] Hereinafter, this report and recommendation will use "Max" when referring to either "Max" or "Max Lite."

3

to not encourage those merchandisers to sell its earplugs in the drug or grocery sections of stores.  [*Id.*, PageID.32].

Before the consent order was finalized, Leight's then chief executive officer had denied selling "directly to retail outlets, or to companies who provide such products to their workers or to ultimate consumers"; he said that Leight sold only to distributors.  [ECF No. 32-9, PageID.104-07].  But in September 2017, Dan Asma of McKeon emailed John Wright of Honeywell to address direct sales of Max earplugs to consumers on Amazon.com.  [ECF No. 32-3, PageID.35].  The link included in the email leads to an Amazon webpage.  [*Id.*].[2]  Asma alleged that the sales on Amazon violated the consent order, and he urged Honeywell to "please cease and desist the use of MAX or MAX LIGHT in the retail market."  [*Id.*].

In an October 25, 2017 letter sent to Asma in response to his September 2017 email, Joshua Foster of Honeywell denied that it was violating the consent order and stated that it had not sold "products bearing the Max and Max Light marks in a manner intended for retail consumer purchase."  [ECF No. 32-4, PageID.38].  He said that Honeywell sold Max

---

[2] https://www.amazon.com/Howard-Leight-Honeywell-Disposable-MAX-1/dp/B0013A0C0Y/ref=pd_day0_121_3/139-0282800-3739301?_encoding=UTF8&pd_rd_i=B0013A0C0Y&pd_rd_r=D008WYW3PNZNR6XE03JZ&pd_rd_w=t3q8B&pd_rd_wg=XlrJ0&psc=1&refRID=D008WYW3PNZNR6XE03JZ

4

products "in the industrial safety market only to manufacturing entities, distributors and resellers in that channel" and did not intend "the sale of Max or Max Light products directly to consumers for consumption in the retail market." [*Id.*]. Foster asserted that Honeywell's earplugs were packaged and sold in 100 to 500 pair quantities in a manner that "is inappropriate for retail consumer sales and very much different from the packaging of our retail products." [*Id.*]. He attached photos of 100 and 200 pair industrial box versions of Max earplugs, 200 and 500 pair industrial dispensers of the earplugs, and an industrial vending machine used to sell the earplugs. [*Id.*, PageID.39-40]. Foster assured Asma, "Following the issuance of, and in compliance with, the Consent Order, we ceased using the Max and Max Lite marks in our packaging of any products intended for retail consumer purchase, including shooting ports and retail, and instead began using trademarks Leight, Super Leight and Honeywell." [*Id.*, PageID.38]. It was "[f]or these reasons" that Honeywell has "not violated the Consent Order." [*Id.*].

In November 2017, McKeon's attorney, J. Michael Huget, responded to Foster's letter by stating that it did not matter how MAX earplugs were packaged; Honeywell's sale of its earplugs "on Amazon, arguably the leading internet retail marketplace" was the problem. [ECF No. 32-5,

5

PageID.42]. Huget reported that McKeon had discovered that Max products were also sold on Walmart's website, and he attached copies of Walmart and Amazon webpages showing Max earplugs being sold in 20, 50 and 100 pair quantities. [*Id*., PageID.42-59].

With no resolution of the dispute, McKeon filed its motion to enforce the consent order in March 2018. In its response, Honeywell relies in part on a declaration from Deborah J. Gendreau-Flynn, a Honeywell sales leader, who not only admitted to selling Max earplugs through online retailers but asserted that "Leight MAX® earplugs have been sold through online websites for years." [ECF No. 41-2, PageID.220].[3] A third party sold Max earplugs on Amazon as early as 2004 and Honeywell's predecessor began selling the earplugs on Amazon in 2009. [*Id.,* PageID.220 and n.1]. A third party sold Max earplugs on Walmart.com in 2012 and 2013, and Honeywell has sold them on Walmart.com since 2015. [Id., PageID.221-21]. Since acquiring Leight, "Honeywell has made online sales a focus of its marketing and distribution strategies." [*Id*., PageID.222].

Prior to the hearing, McKeon filed a supplemental brief stating that it discovered in October 2018 that visitors searching for "Mack's earplugs" on

---

[3] This version of the declaration is sealed. The unsealed copy is on the record at ECF No. 41-2].

6

Amazon received a "headline search ad" that featured Honeywell's Max earplugs. [ECF No. 55]. McKeon accuses Honeywell of selecting the "Mack's" mark as a keyword to trigger the display of the Max earplugs headline search ad. [*Id.*]. Honeywell's national sales manager responded with a declaration stating that it implemented a campaign in September and October 2018 to display its headline search ad whenever someone searched for "earplugs," and did not use "Mack's" trademark to trigger the ad. [ECF No. 57].

McKeon does not dispute Honeywell's allegations that Max earplugs have been sold online through Amazon.com and Walmart.com for ten or more years, but it states that McKeon's Chief Executive Officer did not know about those sales until September 2017. [ECF No. 32-7; ECF No. 44, PageID.243].

### III.   Analysis

**A. The Court has the Authority to Enforce the Consent Order.**

In its motion, McKeon asks the Court to enforce the consent order by ordering Honeywell to immediately discontinue its violative sales through online retailers, to award McKeon costs and attorney's fees, and to grant McKeon any additional relief deemed equitable and just. But at the hearing, McKeon did not identify authority that would allow the Court to

award costs and attorney's fees, and its focus was on its request to enforce the permanent injunction in the consent order.

Honeywell does not object to this Court's jurisdiction to enforce the consent order, and any objection would have been without merit. The consent order indicated that the Court retained the jurisdiction to enforce its terms. [ECF No. 32-2, PageID.32]. And as a matter of law, the district court retains jurisdiction to enforce such a settlement agreement so as "to preserve the position for which the parties bargained." *Grand Traverse Band of Ottawa & Chippewa Indians v. Dir., Michigan Dep't of Nat. Res.*, 141 F.3d 635, 641 (6th Cir. 1998) (citation and internal quotation marks omitted).

## B. There Are No Material Factual Disputes that Require Discovery or an Evidentiary Hearing.

Honeywell asserts that discovery and an evidentiary hearing are necessary to resolve McKeon's motion if the Court finds the consent order to be ambiguous and to determine the extent to which Honeywell has sold Max earplugs in the online market. For the reasons stated below, the Court finds the consent order to be unambiguous. But as an initial matter, the Court notes that there are no material factual disputes about the extent to which Honeywell sold Max earplugs online. Honeywell has admitted that:

8

- It has sold Max earplugs online through Amazon.com and Walmart.com for years.  [ECF No. 41-2, PageID.220-22].

- In fact, "Honeywell has made online sales a focus of its marketing and distribution strategies."  [*Id.*, PageID.222].

- It implemented a campaign in September and October 2018 to display a headline search ad whenever someone searched for "earplugs," so that a consumer search for Mack's earplugs would trigger the Max headline ad.  [ECF Nos. 55, 57].

So neither discovery nor an evidentiary hearing is necessary for the Court to find that Honeywell has sold Max earplugs online through Amazon.com and Walmart.com, and in a manner that directly competed with McKeon's earplugs.  Honeywell suggests that its online sales were directed at the industrial safety market, but its headline ad was triggered when *any* consumer searched for "earplugs."

Thus, the questions before the Court are whether sales on Amazon.com, Walmart.com and other consumer retail websites violate the consent order and whether the doctrine of laches precludes McKeon for enforcing to consent order to preclude Honeywell from continuing to sell earplugs through the online markets.  And because a consent order is interpreted as a contract, as explained below, evidentiary development of

9

those questions is only necessary if the consent order is ambiguous. The Court finds that the order is not ambiguous and that an evidentiary hearing is therefore not warranted.

### C. Honeywell's Argument that the Consent Order Precludes It Only from Selling Max Earplugs in Physical Stores is Unpersuasive and Relies on Extrinsic Evidence.

The Sixth Circuit has described a consent decree as "a strange hybrid in the law" in that "it is both a contract that has been negotiated by the parties and a court order which can be altered by a court if circumstances warrant." *Dotson v. U.S. Dep't of Hous. & Urban Dev.*, 731 F.2d 313, 318 (6th Cir. 1984). The court must therefore consider the "four corners" of the consent order to determine "the legal constraints which govern the behavior of the parties during the life of the decree," and it may depart from the four corners only if the language of the order is ambiguous. *Id.* A determination of whether a contract is ambiguous also must be made by reference to the four corners of the agreement. "Courts may not . . . use extrinsic evidence to create an ambiguity. Rather, the ambiguity must be patent; that is, apparent on the face of the contract." *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996).

Honeywell argues that the consent order bars it "from selling Leight MAX® earplugs to two defined categories of retail *establishments*, a term

10

that refers to physical stores, not Internet portals." [ECF No. 40, PageID.150 (emphasis in original)]. But nothing in the consent order defines establishments as physical stores. Honeywell relies on alleged extrinsic evidence outside of the four corners of the agreement for this narrow interpretation, and that evidence is unpersuasive.

Honeywell cites the Merriam-Webster definition of defining an "establishment" as "a place of business or residence **with its furnishings** and staff." [*Id.* (emphasis in original)]. But the definition of "establishment" provided by the online dictionary Honeywell cites broadly defines the word as "something established." The reference to a business with furnishings is included only as one example of an establishment, not as its definition.[4]

Honeywell then describes opinions that described the term "establishment" as referring to a physical structure or that differentiated between physical businesses and online retail stores. [*Id.*, PageID.151-53]. Those opinions constitute impermissible extrinsic evidence, and they do not actually hold that an "establishment" refers only to a physical structure or that an online retailer is excluded from the definition of that term.

---

[4] https://www.merriam-webster.com/dictionary/establishment (last visited on November 11, 2018).

11

For example, Honeywell cites the analysis of *Checkpoint Sys., Inc. v. Check Point Software Techs, Inc.,* 104 F. Supp. 2d 427 (D.N.J. 2000), as being particularly insightful in addressing the "physical-establishment-versus-Internet-sales distinction." [ECF No. 40, PageID.153]. But that opinion did not hold that there is a distinction between online and in-store retail sales; it held that the two companies at issue did not compete with one another. "They do not directly compete with each other, for they operate in completely different segments of the broad business of corporate security: in the dominant sweep of their respective spheres, plaintiff focuses on protecting physical assets while defendant focuses on protecting the flow of electronic information." *Checkpoint Sys., Inc.,* 104 F. Supp. at 445. In contrast, as noted above, Honeywell has admitted to competing directly with McKeon in the online retail marketplace.

Honeywell also cites the fact that the United States Patent and Trademark Office added "on-line retail store services" as new class of advertising in business in 1997, but there is no reference to the term "establishment" in the description.[5]

---

[5] https://idm-tmng.uspto.gov/modules/viewRecordPrint.html?referrer=public&recordId=22081 (last visited on November 11, 2018).

### D. The Four Corners of the Consent Order Unambiguously Preclude Honeywell from Selling Max Earplugs Through Mass Merchandizers.

To argue that it has not violated the consent order, Honeywell emphasizes the portions of the consent order that refer to "stores" and that reserve Leight's right to sell in the "industrial Safety Market *and elsewhere*, except as expressly agreed" in the consent order." [ECF No. 40, PageID.151, 155, quoting ECF No. 32-2, PageID.31-32 (emphasis added)]. These arguments are unconvincing.

The consent order plainly forbids Honeywell from selling Max earplugs in the "Retail Market" to avoid confusion of the respective trademarks. [ECF No. 32-2, PageID.32]. The "Retail Market" includes "mass merchandisers." [*Id.*, PageID.31]. Honeywell misrepresents the language of the consent order by stating that it referred to "mass merchandiser 'stores,'" [ECF No. 40, PageID.154], but the phrase used in the order is "mass merchandisers," and the examples given were of corporate bodies—"K-Mart, WalMart, Target and Meijers." [ECF No. 32-2, PageID.32]. None of these mass merchandisers can be described as mere brick-and-mortar stores, and no one can honestly challenge the fact that Amazon.com and Walmart.com are mass merchandisers. Notably, Honeywell has sold Max earplugs through Walmart.com even though

13

Walmart is specifically referenced as a mass merchandiser in the consent order.

The phrase "Retail Market" also includes the "Drug and Grocery Market." [ECF No. 32-2, PageID.29-30]. It is beyond dispute that Amazon.com and Walmart.com sell cosmetics and household supplies, bringing them within the definition of "Drug and Grocery Market." [*Id.*]. Since Amazon.com and Walmart.com are both within the "Drug and Grocery Market" and "mass merchandisers," the plain language of the consent order enjoins Honeywell from selling Max earplugs through those online merchandisers.

Specifically, Leight agreed to "discontinue all direct sales to retailers in the Drug and Grocery Market" of Max earplugs. [*Id.,* PageID.30]. Mass merchandizers were permitted to purchase Max earplugs from Leight only for sale in the "sporting goods and/or firearms department of stores" and only until December 31, 1998. [*Id.*, PageID.32]. The unambiguous intent of the consent order was that, after December 1998, Leight was not allowed to sell Max earplug to "mass merchandisers" at all, including to Walmart. [*Id.*].

Under the plain language of the consent order, Honeywell can sell Max earplugs in the "Industrial Safety Market and elsewhere, *except as*

14

*expressly agreed*" in the consent order—and the parties *expressly agreed* that Leight could not sell Max earplugs to mass merchandizers in the retail market. [*Id.*, PageID.31-32 (emphasis added)]. At the hearing, McKeon stated that the "or elsewhere" means that Honeywell can supply Max earplugs for auditory testing, to airlines, to hotels—to any market other than the retail market. This interpretation is consistent with the overall consent order. And the Court agrees with McKeon that "or elsewhere" cannot mean mass merchandisers in the retail market; the parties *expressly agreed* that Max earplugs could not be sold there.

When the stated goal of the consent order was "to minimize the likelihood of confusion concerning the parties' respective trademarks" in the Retail Market, [ECF No. 32-2, PageID.32], it makes little sense that the parties intended to bar the sale of Max earplugs in individual stores but permit their sale on a national level through online behemoths like Amazon.com and Walmart.com. Honeywell's sales of Max earplugs on websites violated the plain language of the consent order.

**E. Laches Does Not Bar McKeon's Request for Injunctive Relief.**

Honeywell next argues that, because McKeon failed to enforce the online sale of Max earplugs for ten or more years, it is barred by the doctrine of laches from enforcing the consent order now.

15

Laches is the "negligent and unintentional failure to protect one's rights." *Natron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002) (citation and internal quotation marks omitted). A party asserting laches must show: (1) a lack of diligence by the opposing party; and (2) prejudice to the asserting party. *Id.* A delay beyond three-years (the statutory period for bringing a trademark infringement claim) is presumptively prejudicial and unreasonable. *Id.;* M.C.L. § 600.5805(8). The period of delay begins when plaintiff has "actual or constructive knowledge of the alleged infringing action." *Natron Corp.,* 305 F.3d 397 at 408 (citation and internal quotation marks omitted).

If McKeon were seeking damages, that portion of its claim may very well have been barred by the doctrine of laches. But courts within the Sixth Circuit have repeatedly held that laches "does not bar injunctive relief." *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (6th Cir. 2000). *See also Natron Corp.,* 305 F.3d 397 at 408 (laches "does not prevent plaintiff from obtaining injunctive relief"); *Wigs for Kids, Inc. v. Wigs 4 Kids of Michigan, Inc.,* No. 17-11471, 2017 WL 6539271, at *7 (E.D. Mich. Dec. 21, 2017) (the doctrine of laches "would only defend against any claims for damages, not injunctive relief."); *Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964,

16

1003 (W.D. Ky. 2017) (laches is inapplicable when a plaintiff seeks only injunctive relief).

To defeat a claim for injunctive relief, a defendant must prove estoppel, which "requires more than a showing of mere silence on the part of the plaintiff; defendant must show that it had been misled by plaintiff through actual misrepresentations, affirmative acts of misconduct, intentional misleading silence, or conduct amounting to virtual abandonment of the trademark." *Kellogg Co.,* 209 F.3d at 574 (citation and internal quotation marks omitted). Honeywell has not tried to prove estoppel here, and the evidence before the Court does not establish that McKeon actively misled Honeywell or abandoned its trademark.

Honeywell argues that the ordinary rule that laches does not bar injunctive relief does not apply to a motion to enforce a consent decree like the one at issue here. It cites *Bergmann v. Michigan State Transp. Comm'n*, 665 F.3d 681 (6th Cir. 2011), as holding that the doctrine of laches barred the enforcement of a consent decree. In *Bergmann*, the court held that the trial court erred by applying the statute of limitations rather than the equitable doctrine of laches to a motion to enforce a consent decree. *Id.* at 683-84. But the *Bergmann* court reversed the district court's award of damages to the plaintiff, not an award of injunctive

17

relief; the court's analysis made no mention of injunctive relief at all. *Id.* at 682-84. And in contrast to this case, there is no indication in *Bergmann* that the consent decree at issue included a permanent injunction.

In contrast, in *Ford Motor Co. v. Powerflow, Inc.*, No. 86-74100, 2006 WL 2193802, at *7 (E.D. Mich. Aug. 2, 2006), the court did consider a motion to enforce a consent judgment that included a permanent injunction, and it still applied the general rule in the Sixth Circuit that "laches only bars damages that occurred before the filing date of the lawsuit; it does not foreclose a plaintiff's right to injunctive relief and post-filing damages." *Id.*

And, as noted, the Court has the authority "to preserve the position for which the parties bargained," *Grand Traverse Band of Ottawa & Chippewa Indians,* 141 F.3d at 641, and to determine "the legal constraints which govern the behavior of the parties during the life of the decree," *Dotson,* 731 F.2d at 318. The consent order here *permanently* enjoined Honeywell from selling Max earplugs through mass merchandisers the retail market; that is the position for which the parties bargained.

Honeywell's provides no authority for the proposition that the ordinary Sixth Circuit rules regarding the doctrine of laches do not apply to a motion to enforce the consent order and permanent injunction at issue here. The

18

Court should enforce permanent injunction and order Honeywell to cease selling Max earplugs through the online retail market.

## IV. Conclusion

The Court **RECOMMENDS** that McKeon's motion to reopen this case to enforce the final judgment and consent order against Honeywell **[ECF No. 32]** be **GRANTED,** and that Honeywell be **ORDERED** to cease selling Max and Max-Lite earplugs through the online retail market, as required by the permanent injunction.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: May 23, 2019

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party

19

might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 23, 2019.

    s/Marlena Williams
    MARLENA WILLIAMS
    Case Manager