UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MCKEON PRODUCTS, INC.,

           Plaintiff,                           Case No. 95-cv-76322

v.                                       Paul D. Borman
                                       United States District Judge

HONEYWELL SAFETY PRODUCTS
USA, INC., successor-in-interest to        Elizabeth A. Stafford
HOWARD S. LEIGHT AND             United States Magistrate Judge
ASSOCIATES, INC.

           Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT HONEYWELL
SAFETY PRODUCTS USA, INC.'S MOTION TO STAY
NOVEMBER 25, 2020 ORDER (ECF NO. 79) UPON THE POSTING BY
DEFENDANT HONEYWELL OF A $500,000.00 SUPERSEDEAS BOND**

On November 25, 2020, this Court issued an Opinion and Order granting

Plaintiff McKeon Products Inc.'s ("McKeon") Motion to Reopen Case and Enforce

the Court's February 11, 1997 Final Judgment and Permanent Consent Order

Against Honeywell Safety Products, USA, Inc. ("Honeywell"), successor-in-interest

to Howard S. Leight & Associates, Inc. (ECF No. 78, Opinion and Order.) The Court

concurred with the Magistrate Judge's Amended Report and Recommendation that

the four corners of the parties' 1997 Consent Order preclude Honeywell from selling

its Max and Max-Lite brand earplugs in the Retail Market, and ordered that:

1

> Defendant Honeywell, successor-in-interest to Howard S. Leight & Associates, Inc., cease selling Max and Max-Lite earplugs to and through the Retail Market, consisting of all retail establishments including the Drug and Grocery Market, sporting goods stores, and retail mass merchandisers, including online retail mass merchandisers such as Amazon.com and Walmart.com.

(*Id.* at p. 9, PgID 921.) The Court also agreed that the doctrine of laches does not apply to bar Plaintiff McKeon's request for injunctive relief. (*Id.* at pp. 7-8, PgID 919-20.)

Now before the Court is Defendant Honeywell's December 2, 2020 Motion to Stay the Court's November 25, 2020 Opinion and Order. (ECF No. 79, Honeywell's Motion to Stay November 25, 2020 Order ("Honeywell Mot.").) Honeywell requests that the Court stay its November 25, 2020 Order pending appellate review. On December 16, 2020, Plaintiff filed a Response in opposition to a stay, and contended that if the Court were to grant a stay, it should require Honeywell to put up a substantial bond. On December 17, 2020, Honeywell filed a Notice of Appeal of the Court's November 25, 2020 Order to the United States Court of Appeals for the Sixth Circuit. (ECF No. 82.) This Court held a hearing on Defendant's Motion to Stay using Zoom videoconference technology on January 22, 2021. For the reasons set forth below, the Court GRANTS Honeywell's Motion to Stay November 25, 2020 Order, conditioned upon Honeywell posting a supersedeas bond in the amount of $500,000.00.

2

## I.    BACKGROUND

McKeon has sold its soft earplugs under the name "MACK'S" since the 1960's. (ECF No. 32, Pl.'s Mot. to Reopen Case, PgID 11.) Defendant Howard S. Leight began selling its own line of earplugs under the trademark "MAX" in 1986. (*Id.*) McKeon sued Howard Leight in 1995, and in 1996 moved for a preliminary injunction, alleging that Howard Leight's sales of earplugs under the registered "MAX" and "MAX-LITE" trademarks violated the Lanham Act, the Michigan Consumer Protection Act, and Michigan common law. (ECF Nos. 1, 8, 10.)

The parties settled in early 1997, and memorialized their agreement in a Final Judgment and Permanent Consent Order Against Howard S. Leight & Associates, Inc., dated February 11, 1997. (ECF No. 32-2, Consent Order.) Defendant Honeywell is a successor-in-interest to Howard Leight and thus bound by the terms of the Consent Order. The Consent Order addresses Honeywell's sale of the MAX Products, with Defendant agreeing to cease selling earplugs under the "MAX" or "MAX-LITE" trademarks in the "Retail Market." (*Id.*) The "Retail Market" is defined as "the market consisting of all retail establishments including the Drug and Grocery Markets, sporting goods stores and mass merchandisers." (*Id.* ¶ 7.) The "Drug and Grocery Market" is defined as:

> [R]etail establishments where medicines and miscellaneous articles such as cosmetics, food and film and/or where food stuffs, meats,

3

produce, dairy products and other household supplies are the principal products sold as well as any distributor or supplier who sells to these markets. Examples of establishments and distributors in the drug and grocery markets include, but by no means are limited to, Walgreens, Arbor Drugs and McKesson as such parties presently are operating.

(*Id.* ¶ 5, PgID 29-30.)

The Order "expressly acknowledges [Defendant's] continuing rights to use Leight's "MAX" and "MAX-LITE" trademarks in the Industrial Safety Market and elsewhere, except as expressly agreed in this Consent Order." (*Id.* ¶ 8, PgID 32.) "Industrial Safety Market" is defined as "the market in which manufacturing entities purchase earplugs and other hearing protection for their employees' use as well as any distributor or supplier who sells within this market." (*Id.* ¶ 6, PgID 30.)

According to Honeywell, starting in 2004, some third-party distributors began selling Leight MAX earplugs on Amazon.com. (ECF No. 79, Honeywell Mot. at p. 3, PgID 932, citing ECF No. 40-2, Declaration of Deborah J. Gendreau-Flynn ("Gendreau-Flynn Decl.") ¶ 9, PgID 173-74.) Starting in 2009, Howard Leight began directly selling its Leight MAX earplugs on Amazon.com. (*Id.*)

McKeon alleges that in or around September 2017, it learned that Leight MAX earplugs were being sold "in the retail market through various online retailers such as Amazon[.com], Walmart[.com], and Ebay[.com]." (ECF No. 32, Pl.'s Mot. Reopen Case pp. 3-4, PgID 13-14; ECF No. 32-7, Declaration of Devin Benner

4

("Benner Decl.") ¶ 2, PgID 80.) When it was unable to informally resolve the dispute, McKeon filed its motion to enforce the Consent Order on March 21, 2018. (ECF No. 32.)

The Court referred Plaintiff's Motion to Reopen the Case to Magistrate Judge Elizabeth A. Stafford for initial resolution. (ECF No. 52.) Magistrate Judge Stafford issued her Report and Recommendation to this Court on November 13, 2018, recommending that the Motion be granted and that Defendant Honeywell be ordered to "cease selling Max and Max-Lite earplugs through the online retail market pursuant to the permanent injunction." (ECF No. 58, Report and Recommendation; ECF No. 59, Transcript of 11/2/18 Hearing.) The matter was recommitted by this Court to the Magistrate Judge, who issued an Amended Report and Recommendation, recommending the same resolution. (ECF No. 68, Amended Report and Recommendation.) Honeywell objected to the Amended Report. On November 27, 2019, the Court referred this matter to facilitative mediation (ECF No. 77); it did not resolve. On November 25, 2020, the Court entered an Opinion and Order overruling Defendant's objections and adopting the Amended Report, requiring Honeywell to cease selling Max and Max-Lite earplugs in the Retail Market including through online retail mass merchandisers such as Amazon.com and Walmart.com. (ECF No. 78.)

5

On December 2, 2020, Honeywell moved to stay the Court's November 25, 2020 Order pending its then-imminent appeal. (ECF No. 79, Honeywell Mot.) Honeywell argues that it is likely to prevail on appeal, that forcing it to comply with the Court's Order will cause it irreparable harm, and that a stay will not harm Plaintiff or the public interest.

Plaintiff filed a response in opposition to Honeywell's motion on December 16, 2020. (ECF No. 80, Pl.'s Resp.) Plaintiff argues that Honeywell has not shown a likelihood of success on appeal and that it is not facing irreparable harm. Plaintiff contends that a stay will cause it substantial injury and will also harm the public interest. Plaintiff also requests that if the Court grants a stay, that it require Honeywell to post a substantial bond pursuant to Fed. R. Civ. P. 62(d).

Honeywell filed a reply brief in support of its motion the next day, arguing that a stay will simply maintain the status quo of the past 20 years, and that a bond is not necessary in this case. (ECF No. 81.)

On December 17, 2020, Honeywell filed its Notice of Appeal of the Court's November 25, 2020 Order to the Sixth Circuit Court of Appeals. (ECF No. 82, Notice of Appeal.) On December 28, 2020, Appellant Honeywell filed a motion to expedite the appeal, which the Sixth Circuit Court of Appeals granted in part on January 12, 2021. (Case No. 20-2279, Doc Nos. 9, 12-2.) Specifically, the Court of

6

Appeals expedited the briefing schedule, with briefing to be concluded by March 1, 2021, but stated that "[t]he determination of whether to expedite the issuance of a decision is reserved to the merits panel to which this appeal will be assigned." (Doc. No. 12-2.)

## II.   STANDARD

Honeywell moves for a stay pursuant to Fed. R. Civ. P. 62. Rule 62 provides that, "unless the court orders otherwise," an appeal taken in an action for an injunction does not stay the proceedings. Fed. R. Civ. P. 62(c). The Federal Rules of Civil Procedure grant district courts the power to stay an injunction pending appeal:

> While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights....

Fed. R. Civ. P. 62(d). A district court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Whether to grant a stay pending an appeal is within the sound discretion of the District Court. *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).

7

In deciding whether to issue a stay pursuant to Rule 62(d), the court must consider the same factors analyzed when issuing injunctive relief:

> "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."

*SEIU Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (per curiam) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Michigan Coalition*, 945 F.2d at 153. The Sixth Circuit has explained:

> To justify the granting of a stay, ... a movant need not always establish a high probability of success on the merits. *Ohio ex rel. Celebrezze* [*v. Nuclear Regulatory Comm'n*], 812 F.2d [288] at 290 [(6th Cir. 1987)] (citing *Cuomo v. United States Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)). The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. *Id.* Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 n. 4. (6th Cir. 1977). For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits." [*In re*] *DeLorean* [*Motor Co.*], 755 F.2d [1223] at 1229 [(6th

Cir. 1985)] (quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir.1982)).

*Id.* at 153–54.

The moving party has the burden of demonstrating entitlement to a stay. *SEIU Local 1*, 698 F.3d at 343 (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)).

## III.   ANALYSIS

### A.   Honeywell's Likelihood of Success on Appeal

To receive a stay, Honeywell must "demonstrate … that there is a likelihood of reversal." *Michigan Coalition*, 945 F.2d at 153. This likelihood need not rise to the level of a "high probability of success on the merits" if Honeywell can show an inversely proportional threat of irreparable harm. *A. Philip Randolph Inst. v. Husted*, 907 F.3d 913, 918-19 (6th Cir. 2018). But even if serious, irreparable harm is imminent, Honeywell must still demonstrate more than the possibility of success on appeal; it must raise "serious questions going to the merits." *Id.*

#### 1.   Honeywell's Laches Argument

Honeywell first re-asserts its argument that Plaintiff's motion to reopen the case was barred by laches, and that this Court erred in not applying the laches defense in this case. (Honeywell Mot. at pp. 7-9, PgID 1049-51.)

The Sixth Circuit characterizes the defense of "[l]aches [a]s a negligent and unintentional failure to protect one's rights." *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 231 (6th Cir. 2007) (quoting *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)). However, the Sixth Circuit has expressly stated that, "[a]lthough laches precludes a plaintiff from recovering damages, it does not bar injunctive relief." *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (6th Cir. 2000) (citing *TWM Mfg. Co. v. Dura Corp.*, 592 F.2d 346, 349-50 (6th Cir. 1979); *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 366 n.2 (6th Cir. 1985)). *See also Nartron Corp v. STMicroelectronics, Inc.*, 305 F.3d 397, 412 (6th Cir. 2002) (Laches "does not prevent plaintiff from obtaining injunctive relief.") Rather, when a plaintiff "seek[s] injunctive relief only, ... laches [i]s inapplicable and ... [defendants] must prove acquiescence." *Kellogg*, 209 F.3d at 569.

The Magistrate Judge found in the Amended Report that laches does not bar McKeon's motion because laches does not bar injunctive relief. (Amended Report at p. 16, PgID 618, citing, in part, *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (6th Cir. 2000) and *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408

10

(6th Cir. 2002).) In the November 25, 2020 Order, this Court adopted the Amended Report and rejected Honeywell's contention that the doctrine of laches applies against Plaintiff McKeon's motion to enforce the 1997 Consent Order. (ECF No. 78 at pp. 7-8, PgID 919-20.) The Court also noted, with approval, the 2020 district court decision in *Cernelle v. Graminex, L.L.C.*, 437 F. Supp. 3d 574 (E.D. Mich. 2020), which stated "in the Sixth Circuit, laches does not foreclose the plaintiff's right to injunctive relief and post-filing damages." (*Id.*, quoting *Cernelle*, 437 F. Supp. 3d at 603 (citing *Nartron Corp.*, 305 F.3d at 412 (citing *Kellogg Co.*, 209 F.3d at 568).)

Honeywell argues that laches is a full defense to an untimely motion to enforce a consent decree, relying, as it did before, on *Bergmann v. Michigan State Transportation Commission*, 665 F.3d 681 (6th Cir. 2011). (Honeywell Mot. at pp. 6-10, PgID 935-39.) In *Bergmann*, the Sixth Circuit Court of Appeals addressed the issue of when an action to enforce a consent decree is untimely filed. It held that the equitable doctrine of laches governs that issue and not the Michigan statute of limitations. *See Bergmann*, 665 F.3d at 683-84 (citing *Brennan v. Nassau Cnty.*, 352 F.3d 60, 63 (2d Cir. 2003)). Honeywell argues that the Amended Report erroneously applied the general rule from *Kellogg* that laches does not bar injunctive relief, contending that *Kellogg* dealt with laches as a defense to trademark infringement claims, and this case, like *Bergmann*, involves a consent decree. Honeywell contends

11

that the Amended Report "improperly dismissed the Sixth Circuit's governing authority by incorrectly stating that *Bergmann* did not involve injunctive relief," when it did. (Honeywell Mot. at p. 8, PgID 937.) Honeywell's counsel posited at oral argument that if it was clear that Bergmann's request for injunctive relief would not be subject to a laches defense, then it would assume that the Sixth Circuit would have only remanded as to the question of whether laches barred the monetary damages, instead of remanding as to both monetary damages and injunctive relief. Honeywell argues that, on appeal in this case, the Sixth Circuit will apply laches to this dispute and consider whether there was a "lack of diligence" by McKeon and "prejudice" to Honeywell. (Honeywell Mot. at p. 6, PgID 935, citing *Nartron Corp.*, 305 F.3d at 408.) Honeywell contends that "McKeon's 14-year delay is well beyond the analogous statute of limitations … and therefore is 'presumptively prejudicial and unreasonable.'" (*Id.* at pp. 6-7, PgID 935-36.)

Plaintiff argues in response that *Bergmann* "simply stands for the proposition that: (1) statutes of limitations do not apply in actions to enforce a consent decree; (2) a party seeking to enforce a consent decree must ask for an equitable remedy; and, (3) those equitable remedies are 'subject to the usual equitable defenses'—*e.g.*, laches." (Pl.'s Resp. at p. 9, PgID 1051.) According to Plaintiff, the *Bergmann* court ordered the parties on remand to "apply the doctrine of laches in deciding

12

[plaintiff's] motion to enforce a consent decree," but "did not provide any guidance on how a court should apply laches to a particular case." (*Id.* at pp. 9-10, PgID 1050-52.) Plaintiff examined the subsequent proceedings in the *Bergmann* case, after remand from the Sixth Circuit, and noted that the parties in that case addressed the application of laches to the liquidated damages requested, but acknowledged that the injunctive relief sought – remediation of the property at issue – was ongoing and not barred by laches. (*Id.* at pp. 8-9, PgID 1051-52, citing, in part, ECF No. 80-4, Ex. C, Order Resolving Liquidating Damages Claim (noting that "remediation of the property is ongoing and either party can file a motion to ***enforce the Consent Judgment*** as it concerns the remediation issue if they deem it appropriate.") (emphasis in original).) Plaintiff argues that courts within this Circuit continue to rely on *Kellogg* for the rule that laches does not bar a claim for injunctive relief, and in particular a claim to enforce trademark rights, and that such a finding does not conflict with *Bergmann*, which "merely held that a court must consider *whether* a defense of laches bars the enforcement of a consent order – not that laches *must* bar enforcement of a consent order." (*Id.* at p. 11, PgID 1053.)

This Court is not persuaded that it has erred in its ruling on Honeywell's laches argument. Courts in the Sixth Circuit consistently hold that the doctrine of laches does not bar prospective injunctive relief, such as that sought in this case. *See, e.g.,*

13

*Nartron*, 305 F.3d at 408; *Kellogg*, 209 F.3d at 568-69 (laches "precludes a plaintiff

from recovering damages, it does not bar injunctive relief"); *Cernelle*, 437 F. Supp.

3d at 603 ("laches does not foreclose the plaintiff's right to injunctive relief and post-

filing damages"); *AWGI, L.L.C. v. Atlas Trucking Co.*, 381 F. Supp. 3d 832, 845-46

(E.D. Mich. 2019) (finding that "laches does not bar Plaintiffs' request for injunctive

relief"); *Daunt v. Benson*, 425 F. Supp. 3d 856, 876 (W.D. Mich. 2019) (explaining

that "the doctrine [of laches] does not prevent a plaintiff from obtaining prospective

injunctive relief"), *aff'd*, 956 F.3d 396 (6th Cir. 2020); *Wigs for Kids, Inc. v. Wigs 4

Kids of Michigan, Inc.*, No. 17-11471, 2017 WL 6539271, at *7 (E.D. Mich. Dec.

21, 2017) (finding that laches "would only defend against any claim for damages,

not injunctive relief"); *accord Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 959-60 (9th

Cir. 2001) ("Laches stems from prejudice to the defendant occasioned by the

plaintiff's past delay, but almost by definition, the plaintiff's past dilatoriness is

unrelated to defendant's ongoing behavior that threatens future harm."). However,

this Court recognizes Honeywell's arguments regarding the tension created by the

*Bergmann* and *Nartron/Kellogg* rulings, and that this issue will be addressed by the

Sixth Circuit on appeal. Accordingly, the Court finds that this element weighs in

favor of granting a stay. *See Simon Prop. Grp., Inc. v. Taubman Ctrs., Inc.*, 262 F.

Supp. 2d 794, 798 (E.D. Mich. 2003) (explaining that "a movant can satisfy [the

likelihood-of-success] elements where substantial legal questions or matters of first

impression are at issue and the equities favor maintaining the status quo") (citations

omitted).[1]

> **2.     Whether the Court's Order "Expands the 1997 Consent Order's definition of 'Retail Market'" or Shrinks Its Definition of "Industrial Market"**

Honeywell argues that it is likely to succeed on the merits of its challenge to

the Court's November 25, 2020 Order. Honeywell contends that the parties' 1997

Consent Order, which must be strictly construed, did not expressly address on-line

or Internet sales, and thus the Court's Order improperly "expand[ed]" the 1997

Consent Order's definition of "Retail Market" to encompass such sales. (Honeywell

Mot. at pp. 10-16, PgID 939-45.) Honeywell argues, as it did before, that the Consent

Order defines "Retail Markets" as "establishments," limited to physical, brick-and-

---

[1] Plaintiff also argues that, even applying the doctrine of laches, it does not appear that Honeywell has demonstrated prejudice beyond McKeon's alleged delay in bringing this suit. (See Pl.'s Resp. at pp. 12-13, PgID 1054-55.) However, Honeywell does argue that McKeon's 14-year delay in bringing this action – which is "well beyond the analogous [three-year] statute of limitations" – is "presumptively prejudicial and unreasonable." (Honeywell Mot. at p. 7, PgID 936.) This Court does not concur with Honeywell's argument. As explained in *Kellogg*, Honeywell must show "more than a showing of mere silence on the part of the plaintiff," and must instead "show that it had been misled by plaintiff through actual misrepresentations, affirmative acts of misconduct, intentional misleading silence, or conduct amounting to virtual abandonment of the trademark." *Kellogg*, 209 F.3d at 574 (citation and internal quotation marks omitted). This Court concludes that Honeywell has not made any such showing.

mortar stores, while the "Industrial Safety Market" broadly refers to "the market where manufacturing entities purchase earplugs," and thus includes Amazon.com as well as any industrial safety store. (*Id.* at pp. 16-17, PgID 945-46.) Honeywell concludes that "the fact that manufacturers buy on Amazon.com <u>does</u> make that website part of the 'Industrial Safety Market.'" (*Id.* at p. 17, PgID 946.) Honeywell, at oral argument, conceded that it has not taken any steps to limit its Amazon sales to industrial-safety market customers.

For the reasons articulated in the Amended Report and the November 25, 2020 Order, the Court disagrees with this argument. This Court concurred with the Magistrate Judge's Amended Report and Recommendation that the four corners of the 1997 Consent Order precludes Honeywell from selling Max and Max-Lite earplugs to and through the Retail Market, consisting of all retail establishments including the Drug and Grocery Market, sporting goods stores, and retail mass merchandisers. The Consent Order does not expressly limit the Retail Market to only *physical* establishment retailers, as Honeywell claims. Rather, the Consent Order forbids Honeywell from selling Max earplugs in the "Retail *Market*" to avoid confusion of the respective trademarks. (Consent Order ¶ E.8.) "Retail Market" is defined, in part, as including mass merchandisers, which the Consent Order provides includes "but are not limited to, K-Mart, WalMart, Target and Meijer[]." (*Id.*) These

16

establishments are not solely "brick-and-mortar stores," and it would make little sense that the parties intended to bar the sale of Max and Max-Lite earplugs in physical stores only, but permit their sale on a national level through online mass merchandisers such as Amazon.com and Walmart.com to those same retail customers. As counsel for McKeon explained at the hearing, the Internet is not a "market," but rather a platform or method of providing a product to a customer. One of the "primary intents and purposes" of the Consent Order is to "minimize the likelihood of confusion concerning the parties' respective trademarks by [Honeywell's] sale and marketing of earplugs sold under the trademarks "MAX" or "MAX-LITE," in the Retail Market." (Consent Order ¶ E.8.) Honeywell's sale of its products through Amazon.com and Walmart.com would likely advance such confusion in the Retail Market rather than minimize it.

Further, as Plaintiff argues in its Response brief, at the time the Consent Order was entered, Leight sold its products to about 700 independent distributors, who in turn sold the products nationwide through their own accounts for retail sale and/or industrial sale, but Leight itself made "no sales directly to retail outlets[.]" (Pl.'s Resp. at p. 14, PgID 1056, citing ECF No. 32-9, Declaration of John Dean, Chief Executive Officer of Howard S. Leight & Associates, Inc., ¶ 4, PgID 104.) Plaintiff contends that if the Consent Order only restricted sales of MAX products by

17

Leight/Honeywell to physical stores, as Honeywell contends, as opposed to sales in the consumer "Retail Market," then the Consent Order would have had no impact on Leight because *it* never directly sold its product to such "retail establishments" in the first place. (Pl.'s Resp. at p. 14, PgID 1056.)

Although the Court is not persuaded by Honeywell's substantive claims of error in the Court's Order, given Honeywell's assertions that industrial safety customers make purchases online, including through business-to-business purchases on Amazon.com as well as other more specific "industrial" websites, the Court finds that Honeywell has raised multiple questions regarding the internet/online issue and on balance this element weighs in favor of granting a stay.

**B.      Whether Honeywell Will Suffer Irreparable Harm**

Honeywell contends that its goodwill and reputation will be irreparably harmed if it must stop sales on websites such as Amazon.com because its industrial-safety customers, who increasingly buy their supplies online (especially during the COVID-19 pandemic) will switch to an on-line competitor, resulting in a significant loss of sales and market share. (Honeywell Mot. at pp. 18-22, PgID 947-51, citing ECF No. 79-1, Declaration of John P. Wright ("Wright Decl.").) Honeywell further contends that Amazon would "likely form negative impressions of Honeywell as a business partner," causing reputational harm that "could well have negative

18

downstream effects on Honeywell's ability to sell other products to this partner[.]" (*Id.* at p. 21, PgID 950, citing *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1157 (10th Cir. 2001); *Baker Hughes Inc. v. Nalco Co.*, 676 F. Supp. 2d 547, 554 (S.D. Tex. 2009), *aff'd*, 374 F. App'x 979 (Fed. Cir. 2010); *Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978, 982 (W.D. Tenn. 2006), *amended in part* 2006 WL 8435285 (W.D. Tenn. Oct. 27, 2006).) Honeywell states that McKeon agrees that the Consent Order permits Honeywell to sell MAX earplugs on the Internet, but that Honeywell contends that it cannot distinguish a permitted internet sale from a prohibited one. (*Id.* at p. 22, PgID 951.) Again, the Court notes that Honeywell has not taken any action to restrict its online sales to industrial safety customers.

Plaintiff argues in response that Honeywell has not shown irreparable harm that justifies a stay while it appeals the Court's Order because, while Plaintiff acknowledges that Honeywell will suffer some harm from having to stop prohibited sales in the Retail Market, assuming Plaintiff prevails, the "loss" will only be "ill-gotten benefits it would receive from violating the Consent Order." (Pl.'s Resp. at p. 18, PgID 1060.) Plaintiff disputes that Honeywell has shown that its sales of earplugs on Amazon.com are to industrial-safety consumers as opposed to retail consumers, as Plaintiff also sells earplugs in packages of 100 on Amazon. Plaintiff also asserts

19

that reviews of purchasers of Honeywell's 200-pack Max earplugs on Amazon.com come from individual retail customers, not just industrial customers. (*Id.* at pp. 18-19, PgID 1060-61.) Plaintiff argues that Honeywell thus has identified only vague and speculative harm, which is insufficient to support a stay. (*Id.* at p. 20, PgID 1062, citing *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (holding that party seeking injunctive relief must show "actual and imminent" harm rather than "speculative or unsubstantiated" harm).)

The Court finds, based on Honeywell's continuing substantial sales of Max and Max-Lite earplugs online, specifically including through Amazon.com, since at least 2004, that Honeywell has sufficiently shown a likelihood that it will be harmed if a stay is not granted pending appeal and it must immediately stop sales of all Max and Max-Lite earplugs on Amazon.com and other websites not deemed dedicated solely or primarily to the "industrial market," and that this factor weighs in favor of a stay.

## C.    Whether Plaintiff Will Be Substantially Harmed

Honeywell argues that a stay pending the appeal will not substantially injure Plaintiff McKeon because Plaintiff waited 14 years before filing its motion and "[a]ny argument that it would be substantially injured by keeping the status quo in place pending appeal could not pass the red-face test." (Honeywell Mot. at p. 23,

PgID 952, citing, in part, *Badeen v. PAR, Inc.*, 19-10532, 2020 WL 2573178, at *2 (E.D. Mich. May 21, 2020) (granting stay, in part, because the litigation had already been pending for years and "[i]n the scheme of things, staying the litigation for two months for the outcome of this appeal will cause minimal – if any – harm to Plaintiffs.").)

Plaintiff argues in response that the law is well settled that irreparable injury and reputational harm necessarily follow when a defendant continues to infringe on a plaintiff's trademark. (Pl.'s Resp. at pp. 21-22, PgID 1063-64.) Plaintiff asserts that it first learned about Honeywell's online sales in September 2017, and thus did not delay in bringing this action, and that its decision not to pursue expedited relief does not undercut this factor. (*Id.* at pp. 22-23, PgID 1064-65.)

The Court finds, on balance, that staying enforcement of the Consent Order while the appeal is pending, and allowing Honeywell internet sales to continue as they have since 2004, will not cause additional substantial injury to Plaintiff that cannot be remedied by requiring Honeywell to post a substantial bond. Accordingly, this factor weighs in favor of issuing a stay.

## D.    Public Interest

Finally, Honeywell argues that the public interest favors a stay in this case because "[g]iving effect to consent orders," such as the Consent Order in this case,

21

"realizes a 'strong public interest in achieving finality in litigation.'" (Honeywell Mot. at p. 24, PgID 953.) Honeywell contends that the Court's November 25, 2020 Order "undermines the public interest by creating an unworkable standard that upends a 1997 resolution of the litigation that has been in place for over 20 years" because it "fails to distinguish between permissible and impermissible Internet sales." (*Id.*) Honeywell continues that "the Order impermissibly excludes Honeywell from its rightful place in the Industrial Safety Market under the Consent Order," and allowing Honeywell's industrial safety customers the choice to continue to purchase safety supplies on Amazon.com and other websites is in the public interest. (*Id.* at p. 25, PgID 954.)

Plaintiff agrees with Honeywell that "[e]nforcing the [Consent] Order serves the public interest," but contends that "[t]his factor weighs against a stay." (Pl.'s Resp. at pp. 23-24, PgID 1065-66.) Plaintiff asserts that there is a public interest in protecting a trademark holder's property interest in its mark, which further weighs against a stay. (*Id.* at p. 24, PgID 1066 (citing *AWGI, LLC, supra* and *Little Caesar, supra*.)

The Court finds, upon consideration of the parties' arguments, that this public-interest factor does not tip strongly either way.

22

Balancing the factors to be considered under Fed. R. Civ. P. 62, the Court is persuaded that a stay of its Order pending the expedited appeal is warranted, but only after requiring a substantial bond.

### E.   Bond

Plaintiff requests that if the Court decides to grant a stay, that it require Honeywell to post a bond or provide other terms that would secure Plaintiff's rights. (Pl.'s Resp. at p. 25, PgID 1067, citing Fed. R. Civ. P. 62(d).) Specifically, Plaintiff contends that while Honeywell focuses its argument on its sales to industrial-safety customers, it has been and continues to make sales to retail customers through its online sales (as shown by the customer reviews on Amazon) and it should be forced to post a substantial bond and account for those prohibited sales during the appeal to (1) ensure that if Honeywell lost its appeal, it could not retain any benefits from violating the Consent Order; and (2) provide some measure of substantial compensation for Plaintiff. (*Id.*)

Honeywell argues in its reply brief that the Court should not impose a bond because of Plaintiff's "lack of urgency over the years," and Plaintiff never sought any monetary sanctions in the Consent Order, and that the Court should instead issue the stay conditioned on prompt compliance if the November 25, 2020 Order is affirmed. (Def.'s Reply at pp. 4-5, PgID 1106-07.)

Under the express language of Fed. R. Civ. P. 62(d), when issuing a stay of an injunction pending appeal, the Court may set a "bond or other terms that secure the opposing party's rights." *See also* Fed. R. App. P. 7 ("In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal…."). Rule 62 is not predicated on a request for monetary relief. "The court has discretion to decide both the need for a bond and the amount of the bond." *Davis v. Detroit Pub. Sch. Cmty. Dist.*, No. 17-12100, 2018 WL 1558860, at *2 (E.D. Mich. Jan. 26, 2018) (citing *Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, No. 04-cv-74891, at*1 (E.D. Mich. June 12, 2008)).

In the notice setting Honeywell's Motion to Stay for hearing, the Court instructed the parties to "be prepared to address the bond and other terms to be provided by Defendant Honeywell necessary to secure Plaintiff McKeon's relief, if the Court grants Honeywell's Motion to Stay pending appeal." (ECF No. 87, Notice, PgID 1125.) At the hearing, counsel for Plaintiff McKeon requested bond in the amount of $2.5 million, and counsel Defendant Honeywell proposed a bond, if any, in the amount of $10,000. (ECF No. 94, 1/22/21 Hearing Tr. at pp. 23, 32-33, PgID 1168, 1177-78.) This "trifle" response by Honeywell did not provide a serious response to the Court's question.

24

It is undisputed that Honeywell is continuing to sell its Max and Max-Lite earplugs on Amazon.com, and other websites, and that at least some part of those "substantial" sales are to retail customers. And it is undisputed that Honeywell has not acted to limit online sales to industrial safety customers, as the Consent Order requires. The Court finds that a stay of the Court's November 25, 2020 Order should be conditioned upon the posting of a substantial supersedeas bond by Honeywell. Upon consideration of the parties' arguments, the Court orders that Honeywell is required to post a supersedeas bond in the amount of $500,000.00.

## IV.   CONCLUSION

For the reasons set forth above, the Court finds that the balance of factors marginally weigh in favor of a stay of the Court's November 25, 2020 Order pending appeal. The Court therefore **GRANTS** Defendant Honeywell's Motion to Stay November 25, 2020 Order (ECF No. 79), and the Court's November 25, 2020 Opinion and Order is **STAYED PENDING APPEAL** upon the immediate posting by Honeywell of a supersedeas bond in the amount of **$500,000.00**.

IT IS SO ORDERED.

                                             s/Paul D. Borman
Dated: January 28, 2021                      Paul D. Borman
                                             United States District Judge