UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MCKEON PRODUCTS, INC.,

                Plaintiff,                        Case No. 95-cv-76322

v.                                           Paul D. Borman
                                           United States District Judge

HONEYWELL SAFETY PRODUCTS
USA, INC., successor-in-interest to
HOWARD S. LEIGHT AND
ASSOCIATES, INC.

                Defendant.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF McKEON PRODUCTS, INC.'S MOTION (1) FOR AN ACCOUNTING OF DEFENDANT HONEYWELL SAFETY PRODUCTS USA, INC.'S VIOLATIVE RETAIL SALES AND PROFITS IN VIOLATION OF THE COURT'S CONSENT ORDER ENTERED FEBRUARY 11, 1997, AND (2) FOR ATTORNEY FEES AND COSTS (ECF NO. 106)

On November 25, 2020, this Court issued an Opinion and Order, adopting the Magistrate Judge's Amended Report and Recommendation, and granting Plaintiff McKeon Products Inc.'s (McKeon) Motion to Reopen Case and Enforce the Court's February 11, 1997 Final Judgment and Permanent Consent Order Against Honeywell Safety Products, USA, Inc. (Honeywell), successor-in-interest to Howard S. Leight & Associates, Inc. (ECF No. 78, Opinion and Order Granting McKeon's Motion to Reopen.) The Court ordered that:

> Defendant Honeywell, successor-in-interest to Howard S. Leight & Associates, Inc., cease selling Max and Max-Lite earplugs to and through the Retail Market, consisting of all retail establishments including the Drug and Grocery Market, sporting goods stores, and retail mass merchandisers, including online retail mass merchandisers such as Amazon.com and Walmart.com.

(*Id.* at p. 9, PageID.921.)

On January 28, 2021, the Court entered an Opinion and Order granting Defendant Honeywell's motion to stay the Court's November 25, 2020 Opinion and Order pending appeal, and subject to posting a $500,000.00 supersedeas bond. (ECF No. 95, Order Granting Honeywell's Motion to Stay.)

On October 8, 2021, the United States Court of Appeals for the Sixth Circuit affirmed this Court's Opinion and Order granting McKeon's Motion to Reopen the Case, and remanded the case to this Court for further proceedings, including dissolution of the stay. *McKeon Prods., Inc. v. Howard S. Leight & Assocs., Inc.*, 15 F.4th 736 (6th Cir. 2021) (also at ECF No. 100). The Sixth Circuit's mandate was issued on November 1, 2021 (ECF No. 101, Mandate), and thereafter this Court dissolved the stay of its November 25, 2020 Opinion and Order, on November 2, 2021. (ECF No. 102, Order Dissolving Stay.)

Now before the Court is Plaintiff McKeon's Motion for an Accounting, and Reimbursement for Attorney Fees and Costs: (1) requiring Defendant Honeywell to account for its retail sales and profits; (2) providing limited discovery to McKeon;

2

(3) requiring Honeywell to disgorge profits it received from its actual sales of its Max and Max-Lite earplugs in violation of the Consent Order; (4) awarding McKeon attorney fees and costs incurred in enforcing the 1997 Consent Order against Honeywell; and (5) any other relief the Court finds just and equitable. (ECF No. 106, Pl.'s Mot.) On January 10, 2021, Honeywell filed a Response in opposition. (ECF No. 108, Def.'s Resp.) McKeon filed a Reply on January 24, 2021. (ECF No. 110, Pl.'s Reply.)

Because the Court does not believe that oral argument will aid in its disposition of the motion, it is dispensing with oral argument, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons that follow, the Court GRANTS McKeon's Motion for an accounting, discovery by McKeon, disgorgement of Honeywell's profits, and McKeon's request for attorney fees and costs. The Court DENIES Honeywell's request for discovery.

## I.     BACKGROUND

McKeon has sold its soft earplugs under the name "MACK'S" since the 1960's. (ECF No. 32, Pl.'s Mot. to Reopen Case, PageID.11.) Defendant Howard S. Leight began selling its own line of earplugs under the trademark "MAX" in 1986. (*Id.*) McKeon sued Howard Leight in 1995, and in 1996 moved for a preliminary

3

injunction, alleging that Howard Leight's sales of earplugs under the registered "MAX" and "MAX-LITE" trademarks violated the Lanham Act, the Michigan Consumer Protection Act, and Michigan common law. (ECF Nos. 1, 8, 10.)

The parties settled in early 1997, and memorialized their agreement in a Final Judgment and Permanent Consent Order Against Howard S. Leight & Associates, Inc., dated February 11, 1997. (ECF No. 32-2, Consent Order.) The Consent Order addresses Howard Leight's sale of the MAX Products, with Howard Leight agreeing to cease selling earplugs under the "MAX" or "MAX-LITE" trademarks in the "Retail Market." (*Id.*) The "Retail Market" is defined as "the market consisting of all retail establishments including the Drug and Grocery Markets, sporting goods stores and mass merchandisers." (*Id.* ¶ 7.) The Order "expressly acknowledges [Defendant's] continuing rights to use Leight's "MAX" and "MAX-LITE" trademarks in the Industrial Safety Market and elsewhere, except as expressly agreed in this Consent Order." (*Id.* ¶ 8.) Defendant Honeywell, having purchased Howard Leight in 2010, is a successor-in-interest to Howard Leight and thus bound by the terms of the Consent Order.

According to Honeywell, starting in 2004, some third-party distributors began selling Leight MAX earplugs on Amazon.com. (ECF No. 79, Def.'s Mot. Stay at p. 3, PageID.932, citing ECF No. 40-2, Declaration of Honeywell's Deborah J.

4

Gendreau-Flynn (Gendreau-Flynn Decl.) ¶ 9, PageID.173-74.)[1] Gendreau-Flynn's

Declaration further states that, starting in 2009, Howard Leight began directly selling

its Leight MAX earplugs on Amazon.com. (*Id.*) Honeywell made online sales a

focus of its marketing and distribution strategies since it acquired Howard Leight,

and continued the online sales, which grew by almost 70% from 2016 to 2017, after

growing by 52% from 2015 to 2016. (Gendreau-Flynn Decl. ¶ 11, PageID.175). *See*

*McKeon Prods.*, 15 F.4th at 740.

McKeon alleges that in or around September 2017, it learned that Leight

MAX earplugs were being sold "in the retail market through various online retailers

such as Amazon[.com], Walmart[.com], and Ebay[.com]." (Pl.'s Mot. Reopen Case

pp. 3-4, PageID.13-14; ECF No. 32-7, Declaration of McKeon Chief Executive

Officer (CEO) Devin Benner (Benner Decl.) ¶ 2, PageID.80.) McKeon informed

Honeywell on September 19, 2017, that the sales violated the Consent Order and

requested Honeywell to cease sales, but Honeywell refused. When it was unable to

informally resolve the dispute, McKeon filed its motion to enforce the Consent

---

[1] Deborah J. Gendreau-Flynn is the "Sales Leader, Americas, Retail, Honeywell Safety and Productivity Solutions, responsible for Strategic Distribution of all PPE (personal protection equipment) and Footwear in the marketplace, including Howard Leight earplug products." (Gendreau-Flynn Decl. ¶ 1, PageID.171.) A sealed copy of Gendreau-Flynn's declaration is filed at ECF No. 41-2.

Order on March 21, 2018. (Pl.'s Mot. Reopen Case.) Honeywell opposed the motion. (ECF Nos. 40, 41.)

This Court referred Plaintiff's Motion to Reopen the Case to Magistrate Judge Elizabeth A. Stafford for initial resolution. (ECF No. 52.) The parties appeared before Magistrate Judge Stafford for a hearing on November 2, 2018, and the Magistrate Judge issued her Report and Recommendation on November 13, 2018, recommending that the Motion be granted and that Defendant Honeywell be ordered to "cease selling Max and Max-Lite earplugs through the online retail market pursuant to the permanent injunction." (ECF No. 58, Report and Recommendation; ECF No. 59, Transcript of 11/2/18 Hearing.) Thereafter, this Court recommitted the matter to the Magistrate Judge for further consideration. The Magistrate Judge subsequently issued an Amended Report and Recommendation on May 23, 2019, recommending the same resolution. (ECF No. 68, Amended Report and Recommendation (Amended Report).) Honeywell filed objections to the Amended Report and Recommendation.

On November 27, 2019, this Court referred this matter for facilitative mediation (ECF No. 77); the case did not resolve.

On November 25, 2020, this Court entered an Opinion and Order adopting the Amended Report, and required Honeywell to cease selling Max and Max-Lite

6

earplugs to and through the Retail Market, including online retail mass merchandisers such as Amazon.com. (Opinion and Order Granting McKeon's Mot. to Reopen.)

On December 2, 2020, Honeywell moved to stay the Court's November 25, 2020 Opinion and Order pending Honeywell's then-imminent appeal. (Honeywell's Mot. to Stay.) McKeon opposed the motion. On January 28, 2021, the Court granted Honeywell's request to stay, and required Honeywell to post a $500,000.00 supersedeas bond. (Opinion and Order Granting Mot. to Stay.)

On October 8, 2021, the Sixth Circuit Court of Appeals affirmed this Court's November 25, 2020 Opinion and Order. *McKeon Prods., Inc. v. Howard S. Leight & Assocs., Inc.*, 15 F.4th 736 (6th Cir. 2021). The Sixth Circuit noted that "this appeal poses three questions. Is laches available to Honeywell? If so, does laches bar McKeon's motion to enforce the consent decree against the allegedly prohibited online sales? And, if McKeon's motion was timely, is its argument that some websites fall into the consent decree's definition of the retail market correct?" (*Id.* at 739.

The Sixth Circuit answered the first two questions, by holding that while an affirmative defense of laches might be available to Honeywell, it did not apply to the facts in this case. *Id.* at 742-45. The Court explained that "a motion to enforce a

consent decree is an equitable action subject to equitable defenses" and that "[l]egal doctrines that would apply to the underlying disputes are inapplicable." *Id.* at 742. The Sixth Circuit concluded that McKeon had discovered Honeywell's sale of its earplugs on Amazon in September 2017, "when the sales began to spike," and that McKeon had timely moved to enforce the Consent Order in March 2018, after Honeywell had refused McKeon's attempts to resolve the dispute without resorting to the court. *Id.* at 743-44. The Sixth Circuit further found that Honeywell failed to show that it was prejudiced by the elapsed time, held that the Michigan six-year contract statute of limitations applied to this case, and that McKeon sued "well within the six-year statutory period" after discovering Honeywell's violations of the Consent Order. *Id.* at 744. The Sixth Circuit found that, "[i]n fact, the presumption [of prejudice] here favors McKeon's claim being timely and unprejudicial" because "[a]s McKeon puts it, Honeywell 'gambled that it found a loophole in the Consent Order' so that it can 'exploit the Retail Market,'" and "Honeywell has lost that bet." *Id.* at 744-45.

The Sixth Circuit Court of Appeals then turned to the question of whether the Consent Order bars Honeywell's online retail sales. The Court found that "a retail website, like Amazon, is a 'retail establishment' under the Decree," and thus held that the Consent Order bars Honeywell's online retail sales on Amazon and similar

8

retail websites. *Id.* at 745. That decision noted that "Honeywell remains free to sell in 'the Industrial Safety Market or elsewhere,'" explaining that, "or elsewhere" includes "direct sales of MAX-brand earplugs to corporate consumers, like hotels, hospitals, or airlines." *Id.* at 746.

Thus, the Sixth Circuit affirmed this Court's Order and remanded the matter for further proceedings consistent with its opinion, and ordered dissolution of the stay. *Id.* at 746-47.

Following issuance of the Sixth Circuit's mandate, this Court entered an Order lifting the stay and scheduling a status conference for November 16, 2021. (ECF No. 102, Order Lifting Stay.) At the status conference, counsel for McKeon stated that McKeon seeks an equitable remedy from the Court consisting of disgorgement of Honeywell's profits from sales it made in the online retail market for an extended period of time, as well as discovery of Honeywell's sales information. The Court requested the parties to brief the issue of the remedies sought by McKeon.

On December 10, 2021, McKeon filed the instant Motion for an Accounting and for its Attorney Fees and Costs. (ECF No. 106, Pl.'s Mot.) McKeon argues that when it moved to reopen the case for purposes of enforcing the 1997 Consent Order, it requested that the Court "enter an Order that will enforce the Consent Order and remedy, to the extent possible, past violations of it by Defendant [Honeywell]."

9

McKeon contends that because "[n]ow that the first part of this request has been conclusively resolved in McKeon's favor, McKeon respectfully asks the Court to address the second part by remedying the past violations of the Consent Order."

McKeon asks the Court to order Honeywell to provide an accounting of its retail sales and profits "as far back as its records allow until the date of the order dissolving the stay," and to "[o]rder the parties to engage in limited discovery to allow McKeon to probe the sales data provided by Honeywell." McKeon further seeks an order that Honeywell disgorge to McKeon the full amount of profits Honeywell received from sales that were in violation of the Consent Order. McKeon also seeks an award of its attorney fees and costs, and "any other relief the Court finds just and equitable."

Defendant Honeywell's Response in opposition to McKeon's motion contends that McKeon's motion "impermissibly asks *post hoc* for a monetary award," when McKeon expressly disclaimed any claim for such relief during the litigation of its Motion to Enforce, and instead sought only injunctive relief. (ECF No. 108, Def.'s Resp.)

Honeywell further contends that McKeon should be prevented from relitigating the Magistrate Judge's statement that "McKeon did not identify authority that would allow the Court to award costs and attorney's fees." (*Id.* at p. 21,

10

PageID.1313, quoting Amended Report, PageID.609-10, 621.) McKeon had requested fees and costs in its Motion to Enforce the Consent Order. Honeywell contends that McKeon could have appealed the scope of relief awarded in this Court's final order, but did not.

Honeywell further argues that if the Court is inclined to order some profit award, that any monetary recovery be limited to the period after the January 2021 hearing on Honeywell's motion to stay, when it contends McKeon first indicated a desire to seek monetary relief. Honeywell also contends that both parties should be permitted to seek discovery.

McKeon's Reply brief argues that this Court has not yet fully addressed McKeon's request for all remedies available for Honeywell's past violations of the Consent Order. (ECF No. 110, Pl.'s Reply.) McKeon "agree[s] that it did not seek damages with its first motion," but contends that it has never waived or disclaimed monetary relief in the form of disgorged profits, or relief based on its attorney fees and costs in seeking enforcement of the Consent Order.

McKeon concludes that Honeywell should not be entitled to any discovery from McKeon, and that nothing in the Magistrate Judge's Amended Report and Recommendation, or this Court's Opinion and Order, prevents McKeon from

11

seeking its attorneys' fees and costs pursuant to the Court's inherent equitable power to administer, enforce, and punish violations of the Consent Order.

## II. LEGAL STANDARD

"[A] consent decree is a 'settlement agreement subject to continued judicial policing.'" *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). "[I]t is well-settled that 'courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.'" *Id.* at 1018 (quoting *Sarabia v. Toledo Police Patrolman's Ass'n*, 601 F.2d 914, 917 (6th Cir. 1979)); *Innovation Ventures, LLC v. N2G Distrib., Inc.,* 763 F.3d 524, 544 (6th Cir. 2014) (stating that the court's authority to issue and enforce injunctions "springs from the court's inherent equitable powers.").

"When a party to a consent  decree is injured by the violation of the consent decree, 'the injured party must ask the court for an equitable remedy.'" *Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 532-33 (6th Cir. 2012) (quoting *Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir. 1999)). The Sixth Circuit Court of Appeals has recognized that a district court's inherent power to enforce a consent decree is "broad," *United States v. Bd. of Cnty. Comm'rs of Hamilton Cnty.*, 937 F.3d 679, 688 (6th Cir. 2019) (citation omitted), and "[t]he court's choice of remedies is

12

reviewed for an abuse of discretion." *Shy*, 701 F.3d at 533 (quoting *Stone v. City & Cnty. of S.F.*, 968 F.2d 850, 861 (9th Cir. 1992)).

Where a consent decree "does not specify the consequences of a breach," the district court has "equitable discretion" to fashion a remedy for violations of the decree. *Cook,* 192 F.3d at 698; *accord Shy,* 701 F.3d at 532-33. On the other hand, "if parties to a consent decree wish to cabin the district court's equitable discretion by stipulating the remedies for breach, they are free to do so," and "the stipulation will fix the measure of relief to which the victim of a breach is entitled." *Cook,* 192 F.3d at 698.

The parties' 1997 Consent Order provides in paragraph F, <u>Jurisdiction and Enforcement</u>:

> This Court retains jurisdiction to enforce all terms of this Consent Order and this Court retains jurisdiction to enter further orders and directions as may be necessary or appropriate for the construction or administration of this Consent Order, for the modification of any of the provisions contained in it or for the enforcement of compliance with it and for the punishment for violations of it.

(ECF No. 32-2, Consent Order, ¶ F, PageID.32.)

While the Consent Order does not specify the consequences of a breach, the District Court may exercise its "equitable discretion" to fashion a remedy for violations of the Consent Order. This Consent Order did not cabin the District

Court's equitable discretion by stipulating the remedies for breach. *See Cook*, 192

F.3d at 698; *accord Shy*, 701 F.3d at 532-33.

## III.    ANALYSIS

This Court had concluded that Defendant Honeywell violated the parties'

Consent Order through its online retail sales, and issued an order that Honeywell

must:

> cease selling Max and Max-Lite earplugs to and through the Retail
> Market, consisting of all retail establishments including the Drug and
> Grocery Market, sporting goods stores, and retail mass merchandisers,
> including online retail mass merchandisers such as Amazon.com and
> Walmart.com.

(11/25/2020 Opinion and Order, PageID.921.) The Sixth Circuit Court of Appeals

has affirmed that Order, holding that the parties' Consent Order barred Honeywell

from selling Max and Max-Lite earplugs in the online retail market that includes

Amazon, et al. *McKeon Prods.*, 15 F.4th 736.

McKeon argues that Honeywell should now be held accountable for its

violations of the Consent Order. Specifically, McKeon asks this Court to order

Honeywell to account for and disgorge the profits it earned through its online retail

sales that violated the Consent Order, and to pay for McKeon's attorneys' fees and

costs incurred in enforcing the Consent Order.

14

### A.   Honeywell Must Provide an Accounting to McKeon and Disgorge Profits Earned From Its Violation of the Consent Order

McKeon argues that it is undisputed that the Court can hold Honeywell accountable for violating the Consent Order by entering an order requiring Honeywell to account for "its ill-gotten profits and disgorge them." (Pl.'s Mot. at pp. 6-7, PageID.1260-61.) McKeon asserts, as the Sixth Circuit opinion confirmed, that Honeywell violated the Consent Order for years, even after McKeon demanded that it cease, and even after the District Court had ruled against Honeywell. (*Id.* at p. 7, PageID.1261.) McKeon contends that equity demands it be compensated for Honeywell's violations, and that disgorgement of profits is the most reasonable and practical means of providing that compensation. (*Id.*) McKeon argues that Honeywell should not benefit from its Consent Order violations. (*Id.* at p. 8, PageID.1262.)

Honeywell does not dispute that the Court has equitable power to enforce the Consent Order and provide an equitable remedy, and that an accounting for profits and an award of disgorgement and are equitable remedies. (Def.'s Resp. at p. 15, PageID.1307.) Honeywell argues, however, that McKeon's request for an accounting should be denied because McKeon did not seek – and in fact expressly disclaimed – such monetary relief in its Motion to Enforce, and instead only sought

15

injunctive relief from the Court, and not damages. (*Id*. at pp. 10-12, PageID.1302-04.)

Honeywell contends that Magistrate Judge Stafford considered McKeon's request for injunctive relief, fees and costs, and "any additional relief deemed equitable and just," and recommended awarding only injunctive relief, and that McKeon did not appeal that ruling, or the final Opinion and Order by this Court adopting the Amended Report and Recommendation. (*Id.* at pp. 11-13, PageID.1303-05, citing, in part, Amended Report, PageID.621, Opinion & Order, PageID.921.) Honeywell argues that McKeon litigated its Motion to Enforce to a final order, and cannot now assert a claim for new relief based on the same facts. (*Id.* at pp. 13-14, PageID.1305-06.) Honeywell further asserts that equity demands denying McKeon's "belated" request for attorney fees and costs, and that McKeon will not be left without a remedy because it received the injunctive relief it sought as its primary goal. (*Id.* at pp. 16-17, PageID.107-08.) The Court notes this recognition by Honeywell that this case involves equitable remedies and defenses.

In its Reply brief, McKeon disputes that it waived or disclaimed all "monetary relief" for Honeywell's violations. (Pl.'s Reply at p. 2, PageID.1369.) McKeon agrees that "it did not seek damages with its first motion and mainly sought an injunction at that stage," but argues that it did not in any way suggest that "it would

16

forgo seeking disgorgement of Honeywell's ill-gotten profits [which McKeon distinguishes from "damages"] through a subsequent motion," or forgo attorney fees and costs. (*Id.*) McKeon asserts that the Court has not yet addressed the issue of other equitable relief, and thus McKeon had no reason to cross-appeal a decision awarding injunctive relief. (*Id.* at pp. 3-4, PageID.1370-71.) McKeon argues that the Court granted McKeon's motion, reopened the case, and ordered Honeywell to cease selling MAX-products through the online retail market, but that the Court has not had an opportunity to address the merits of McKeon's request for equitable monetary relief for Honeywell's violations of the Consent Order, and its request for attorney fees and costs. (*Id.* at p. 4, PageID.1371.)

The Court finds that equitable relief, in the form of an accounting and disgorgement of profits, is appropriate relief for Honeywell's violation of the Consent Order. The scope of such relief is at issue. The parties disagree as to whether McKeon has waived its right to seek attorney fees and costs.

In its initial Motion to Reopen the Case and Enforce the Consent Order, filed on March 21, 2018, McKeon expressly requested the following relief from the Court:

> (i) reopen this case for the limited purpose of enforcing the Court's Final Judgment and Permanent Consent Order; (ii) order Defendant to immediately discontinue its sale of products in violation of the Consent Order; (iii) *award McKeon its costs and attorneys' fees in bringing this Motion*; and (3) grant McKeon any additional relief that it deems equitable and just.

17

(Pl.'s Mot. to Reopen, PageID.4-5, 23 (emphasis added).) The briefing on this Motion did not directly address any other equitable relief, such as an accounting and disgorgement of profits or attorney fees and costs. During the hearing on this motion, the Magistrate Judge noted that "McKeon's motion didn't actually ask for damages. It asked for attorneys' fees and costs but not damages. It asked for injunctive relief." (See ECF No. 59, 11/2/2018 Hr'g Tr., PageID.341.) Thus, additional equitable relief, such as disgorgement of profits, was not discussed.[2]

The Magistrate Judge's Amended Report recommended that McKeon's motion to reopen this case to enforce the consent order against Honeywell be granted, and that Honeywell be ordered to "cease selling Max and Max-Lite earplugs through the online retail market, as required by the permanent injunction." The Amended Report did not otherwise discuss any other equitable relief. (Amended Report at p. 19, PageID.621.)

This Court, in adopting the Amended Report and Recommendation, concentrated on providing McKeon with the immediate relief on its request for injunctive relief, and did not rule out the availability of additional equitable

---

[2] In the transcript of oral argument before Magistrate Judge Stafford, McKeon states that it is concentrating on the securing of an injunction, but it does not explicitly waive claims of equitable disgorgement of profits, and seeking attorney fees and costs. (See ECF No. 59, Transcript of 11/2/18 Hearing, PageID.369-70.)

remedies, including attorney fees and costs to McKeon, the prevailing party. The Sixth Circuit Court of Appeals noted that the scope of Magistrate Judge Stafford's hearing was "on laches and the interpretation of the consent decree." *McKeon Prods.*, 15. F.4th at 741.

This Court's 1997 Consent Order required Honeywell to cease selling Max and Max-Lite earplugs on the online retail market. (Opinion and Order at p. 9, PageID.921.) This Order did not otherwise address other equitable relief available to, or sought by McKeon. Thus, McKeon contends in its Reply brief that the Court has never addressed the issue of other equitable relief, including attorney fees and costs, available to McKeon. (Pl.'s Reply at p. 1, PageID.1368 ("The Court granted the first part of that request. It never addressed the second.")).

The Court finds that McKeon did not "belatedly seek" or "strategically disclaim" available equitable relief, including an accounting and disgorgement of profits, and its attorney fees and costs.

The Court, exercising its "broad" equitable powers, will now consider McKeon's request for equitable relief in the form of an accounting and disgorgement of Honeywell's profits, and reimbursement for its attorney fees and costs necessary to facilitate McKeon's relief: Honeywell should not be permitted to benefit from its longtime violation of the parties' Consent Order, and its continuing violations after

19

McKeon's communication to Honeywell in September 2017, after McKeon filed its Motion to Enforce the Consent Order in 2018, and after this Court had issued the instant injunction in 2020. Indeed, Honeywell has admitted that it has been continuously selling its Max and Max-Lite earplugs in the online retail market since 2009. (Gendreau-Flynn Decl. ¶ 9, PageID.173-74.)

While this Court stayed its Opinion and Order pending appeal at Honeywell's request, it ordered Honeywell to post a significant $500,000 supersedeas bond, stating that "[i]t is undisputed that Honeywell is continuing to sell its Max and Max-Lite earplugs on Amazon.com, and other websites, and that at least some part of those 'substantial' sales are to retail customers," and "it is undisputed that Honeywell has not acted to limit online sales to industrial safety customers, as the Consent Order requires." (Order Granting Stay at p. 25, PageID.1205.)

As the Sixth Circuit has recognized, "[w]here a consent decree is violated, the court should fashion equitable relief that is 'designed to make the party *whole* for his or her loss.'" *Shy*, 701 F.3d at 533 (emphasis added). When equity jurisdiction has been invoked, the court may exercise its "inherent equitable powers … for the proper and complete exercise of that jurisdiction," including ordering monetary remedies. *Liu v. SEC*, 140 S. Ct. 1936, 1947 (2020). It is settled that "[r]elief that enforces a consent decree, '[e]ven if compensatory in purpose and effect … is … an

equitable order.'" *Shy*, 701 F.3d at 533 (quoting *Cook*, 192 F.3d at 695 (italics removed)). "Disgorgement is an equitable remedy," *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985), that forces "a defendant to give up the amount of money equal to the defendant's unjust enrichment." *Gavriles v. Verizon Wireless*, 194 F. Supp. 2d 674, 681 (E.D. Mich. 2002). "That remedy may be imposed for the intentional or reckless violation of a settlement agreement." *A.B. Cernelle v. Graminex, L.L.C.*, 437 F. Supp. 3d 574, 594 (E.D. Mich. 2020) (citing *Kansas v. Nebraska*, 574 U.S. 445 (2015)).

McKeon here asks the Court to order Honeywell to disgorge the profits earned by its conduct that violated the Consent Order. Honeywell (and its predecessor Leight) has been selling Max and Max-Lite earplugs in the online retail market since at least 2009. Those sales have been determined to be in violation of the parties' Consent Order, and McKeon is requesting equitable relief to make it whole for its losses from such violations.

The Court agrees that Honeywell should not be permitted to benefit from those years of prior sales in violation of the Consent Order – selling MAX-branded earplugs directly on Amazon since at least 2009, and after McKeon put Honeywell on notice of such violations as early as September 2017.

The Court grants McKeon's request for equitable relief in the form of an accounting and disgorgement of profits from Honeywell's illegal retail sales, and further grants McKeon's request for attorney fees and costs. "On the equity side, some of the restitutionary remedies" include "accounting for profits." William M. Tabb & Rachel M. Janutis, REMEDIES IN A NUTSHELL, 156 (3d ed. 2017).

### B.     The Time Period for an Accounting and Disgorgement of Profits

McKeon proposes several time periods for an accounting and disgorgement of profits. McKeon first requests that the Court should require Honeywell to disgorge the profits "from sales going back as far as Honeywell has records, but at least to 2010." (Pl.'s Mot. at pp. 8-9, PageID.1262-63 (noting that Honeywell has cited sales data from 2010 and 2012).) Honeywell acquired Leight in 2010.

McKeon requests, alternatively, that Honeywell disgorge profits for the past six years before McKeon moved to reopen this case (from March 21, 2012 to March 21, 2018) – based on the Michigan six-year statute of limitations applicable to breach of contract actions. (*Id.* at p. 9, PageID.1263.)

Honeywell argues in response that, if the Court is inclined to award monetary relief, that such relief should be limited to the time period after the motion to stay hearing on January 23, 2021, because Honeywell contends that was the first time it was "arguably put on notice that there could be monetary consequences if it

22

continued selling its product during the pendency of the appeal." (Def.'s Resp. at p. 18, PageID.1310.) Honeywell contends that McKeon's request to recover for longer time periods, as far back as 2010, is "overreaching to the extreme." Honeywell proposes, in a footnote in its brief, that McKeon "might more plausibly argue for monetary relief going back to January 2015 – six years before it first hinted at a claim for monetary relief," but that "even that would be highly inequitable on this record." (*Id.* at pp. 18-19 & n.9, PageID.1310-11.)

In its Reply brief, McKeon states that even "accepting all of Honeywell's assertions at face value, Honeywell at most makes a case for limiting, not denying, the relief McKeon seeks." McKeon contends that "Honeywell has no credible defense for its sales after the Court enjoined it and during its requested stay," and that "Honeywell must, at a minimum, account to McKeon for its actions during that time period." (Pl.'s Reply at p. 4, PageID.1371.)

The Court exercises its inherent equitable power and discretion, and adopts the time period during which Honeywell must account for and disgorge its profits from its prohibited online retail sales of Max and Max-Lite earplugs, as March 21, 2012, six years before March 21, 2018, when McKeon moved to reopen this case.

The first time period proposed by Plaintiff – "as far back as Honeywell has records, but at least to 2010" – appears to be overreaching. However, Honeywell's

23

counter-proposal to limit the time period to after the January 23, 2021 hearing on Honeywell's motion to stay, almost three years after McKeon moved to reopen this case and enforce the Consent Order, is not meritorious.

The Court finds appropriate Plaintiff's alternative time period – back to March 21, 2012, six years before McKeon filed its Motion to Enforce. As the Sixth Circuit found, "McKeon has not unduly delayed its efforts to enforce the consent decree." *McKeon Prods.*, 15 F.4th at 743. Honeywell admits that it was directly selling MAX-branded earplugs directly on retail websites like Amazon.com as far back as 2009, and the Sixth Circuit found that Honeywell's Amazon sales increased by almost 70% from 2016 to 2017, and that this increased volume led McKeon to discover the violations. *Id*. This 2017 discovery point was reasonable because, as the Sixth Circuit noted, McKeon was "not responsible for policing every corner of the internet," and "McKeon moved to enforce the consent decree a mere six months later." *Id.* Further, the Sixth Circuit recognized that the six-year contract statute of limitations period applies to consent decrees like the Consent Order in this case. *Id.* at 744.

Accordingly, the Court orders Honeywell to provide to McKeon an accounting of its profits from its sales of Max and Max-Lite earplugs through online retail websites, in violation of the Consent Order, starting from March 21, 2012

24

through the date of the order dissolving the stay, November 2, 2021, when Honeywell stated that it ceased selling its products in the Retail Market. Of course, McKeon can also seek further discovery of whether Honeywell has ceased its retail sales as of November 2, 2021.

### C.   The Court Will Permit McKeon Discovery Necessary to Determine Honeywell's Profits From Its Violations, but Deny Honeywell Discovery

McKeon argues that the Court should order Honeywell to do a thorough accounting for its profits and present the evidence supporting its calculations, and then afford McKeon the right to take limited discovery to test those numbers. (Pl.'s Mot. at p. 10, PageID.1264.)

Honeywell argues in response that, if monetary relief is awarded to McKeon, that both parties should be permitted to obtain discovery and present evidence. Honeywell also requests that an appropriate protective order be put in place, as the parties are competitors. (Def.'s Resp. at p. 19, PageID.1311.) Honeywell states that the Court will have to determine which websites are retail websites, and that Honeywell should be allowed to seek discovery from McKeon about when it first became aware that Honeywell was selling MAX earplugs on retail websites. Honeywell also contends it would seek to explore, through discovery, whether sales had been diverted from McKeon to Honeywell.

McKeon notes in its Reply that Honeywell does not dispute that McKeon has a right to discovery if an accounting is ordered. (Pl.'s Reply at p. 5, PageID.1372.) McKeon opposes Honeywell's counter-request for discovery as "mostly lack[ing] merit." McKeon states that it "has no issue with a reasonable protective order." (*Id.* & n.5.) McKeon argues that Honeywell's requested discovery into a laches defense should be denied because that issue has been litigated and denied, and that "no basis exists for discovery into whether sales were diverted from McKeon to Honeywell because McKeon's disgorgement requests does not depend on diversion." (*Id.*) The Court agrees with McKeon.

The Court grants McKeon necessary discovery to determine Honeywell's online retail sales data. The Court approves the parties' joint request for a reasonable protective order.

The Court will not provide for discovery by Honeywell against McKeon, the victim of its continuous illegal conduct. Honeywell has not articulated a legitimate basis for obtaining discovery against McKeon. As the Sixth Circuit noted in its opinion, "[n]one of the terms [of the Consent Order] prohibits McKeon's sales or marketing in any way. Instead, the parties regulated the business practices of Leight [Honeywell] and its various distributors." *McKeon Prods.*, 15 F.4th at 739-40. Given the Sixth Circuit's opinion, Honeywell's request for discovery about when McKeon

26

first became aware of Honeywell's online retail sales is not relevant to the accounting issue. The Sixth Circuit addressed this issue, finding that McKeon's claims are not barred by laches, because the first time McKeon should have known of Honeywell's violation of the Consent Order through its sales on online retail websites was "in 2017, when the sales began to spike." *McKeon Prods.*, 15 F.4th at 744.

Honeywell's request for discovery regarding potential sales diverted from McKeon to Honeywell, is not appropriate "because an award based on the defendant's profits, resting upon principles of unjust enrichment, focuses on the defendant's wrongdoing, not on damage to the plaintiff." *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 6 (2d Cir. 1989) (citing *Blue Bell Co. v. Frontier Refining Co.,* 213 F.2d 354, 363 (10th Cir. 1954) (in trademark infringement case, a profits award is "predicated upon the equitable principle of unjust enrichment, not the legal theory of provable damages"). The case Honeywell relies on in its Response, *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 689 (6th Cir. 2000), does not compel a different result. That case involved a false advertising claim between competitors, and the court's decision that the plaintiff was not entitled to defendant's profits unless it could show that it lost sales or profits, or that defendant gained them, as a result of the alleged false advertising. *Id.* Here,

27

McKeon seeks disgorgement of Honeywell's profits related to its prohibited online retail sales of MAX earplugs in violation of the Consent Order.

Further, Honeywell's reliance on *Powerhouse Marks LLC v. Chi Hsin Impex, Inc.*, 463 F. Supp. 2d 733 (E.D. Mich. 2006) (Duggan, J.), is also misplaced. In that trademark infringement case, following a trial, the jury awarded the plaintiff money damages based on lost royalty revenue, which the court then trebled because defendant intended to derive a benefit from the plaintiff's goodwill or reputation. *Id.* at 738. The court found that the jury properly did not award to plaintiff any of defendant's profits because "Powerhouse has *never attempted to market home fitness equipment for retail sale* and has never licensed any other company to sell such equipment under the POWERHOUSE name," and "there was no credible evidence introduced at trial of actual confusion or damage to Powerhouse's reputation or goodwill arising from Impex's use of the POWERHOUSE mark." *Id.* at 739 (emphasis added). Conversely, in this case, the Court has found that Honeywell sold the product at issue, Max and Max-Lite earplugs, in the online retail market, in violation of the 1997 Consent Order, which provided that Honeywell "recognizes that one of the primary purposes of this Consent Order is to minimize the likelihood of confusion concerning the parties' respective trademarks by Leight's

28

[Honeywell's] sale and marketing of earplugs sold under the trademarks "MAX" or "MAX-LITE" in the Retail Market." (Consent Order, ¶ E.8., PageID.31-32.)

Thus, the Court permits discovery by McKeon of Honeywell's retail sales data and profits related to the online retail sales of Max and Max-Lite earplugs during the relevant time period. The Court will also enter a reasonable protective order provided to it by the parties for consideration. The Court denies discovery to Honeywell.

### D.    The Court Will Award McKeon Its Attorneys' Fees and Costs

McKeon argues that the "American Rule" – that parties are generally responsible for their own attorneys' fees – is inapplicable here, and that equity dictates that McKeon should be awarded the attorney fees and costs it was "forced to expend to enforce its rights under the Consent Order." (Pl.'s Mot. at pp. 10-11, PageID.1264-65.)

Honeywell argues in response that McKeon had requested an award of attorney fees and costs in its Motion to Enforce, and that the request was denied. (Def.'s Resp. at pp. 20-21, PageID.1312-13.) This is not correct. Specifically, Magistrate Judge Stafford questioned the basis for an award of attorneys' fees and costs, stating in the Amended Report that "McKeon did not identify authority that would allow the Court to award costs and attorney's fees, and its focus was on its

request to enforce the permanent injunction." (Amended Report and Recommendation at pp. 7-8, PageID.609-10.) The primary focus of McKeon at that time was the issuance of an injunction to stop Honeywell's escalating violative retail internet sales. Magistrate Judge Stafford ordered Honeywell to cease selling MAX earplugs through the online retail market – the focus of McKeon's request – but did not decide the issue of whether there was a basis for awarding attorney fees and costs to McKeon in her final order. (*Id.* at p. 19, PageID.621.) Nor did this Court, in its Order of affirmance, focus on the issue of awarding attorney fees and costs to Plaintiff McKeon. (*See* ECF No. 78, 11/25/2020 Opinion and Order.)

Honeywell argues that McKeon has waived any right it might have had to attorney fees and costs. (Def.'s Resp. at p. 21, PageID.1313.) Honeywell further argues that McKeon's request should be denied, in any event, because the Consent Order does not include a fee-shifting provision, and thus the default American Rule that each party must bear its attorney fees and costs governs. (*Id.*)

McKeon argues in its Reply that the Magistrate Judge's Amended Report and Recommendation did not "deny or otherwise address the request" for attorney fees and costs, but "left open the possibility for McKeon to recover its fees and costs." (Pl.'s Reply at p. 7, PageID.1374.) McKeon again contends that the Court should

award that relief "pursuant to its inherent equitable powers and power to administer, enforce, and punish violations of the Consent Order." (*Id.*)

As the Sixth Circuit noted in this case, "a motion to enforce a consent decree is an equitable action, subject to equitable defenses. Legal doctrines that would apply to the underlying disputes are inapplicable." *McKeon Prods.*, 15 F.4th at 742. There is a compelling argument that "[a] litigant in the role of a plaintiff entitled to recover damages is also entitled to recover costs of recovering those damages, because otherwise the aggrieved plaintiff is not made whole." Dan B. Dobbs & Caprice L. Roberts, LAW OF REMEDIES: DAMAGES, EQUITY, RESTITUTION, 280-81 (3d ed. 2018). The Court finds that McKeon's request for attorney fees and costs, as the injured and prevailing party, is a proper equitable remedy in this case. The Sixth Circuit noted that the scope of Magistrate Judge Stafford's hearing was "on laches and the interpretation of the consent decree," *McKeon Prods.*, 15 F.4th at 741, and the focus of McKeon at that time was the issuance of an injunction to stop the ever increasing sales by Honeywell in violation of the Consent Order. The Court notes that it has "broad equitable remedial powers," *Shy*, 701 F.3d at 533; the 1997 Consent Order provides that the Court may enter all orders "necessary or appropriate" to the "enforcement of compliance" with the Consent Order and for the "punishment of violations" of its terms. (Consent Order ¶ F.)

31

The Court finds that McKeon, the prevailing party, can only be "made whole" upon being reimbursed for its reasonable attorney fees and costs litigation expenses, in addition to the other relief granted, in pursuing Defendant Honeywell's continuing violations of the Consent Order. Accordingly, the Court will consider a request for the reasonable attorney fees and costs McKeon expended in enforcing its equitable rights under the Consent Order.

## IV.   CONCLUSION

For the reasons set forth above, applying its powers to grant equitable relief, the Court GRANTS Plaintiff McKeon's Motion against Defendant Honeywell for an Accounting of Profits and for its Attorney Fees and Costs (ECF No. 106).

Specifically, the Court:

1) ORDERS Honeywell to provide an ACCOUNTING to McKeon of its sales and profits from sales in the online retail market made in violation of the Consent Order, from March 21, 2012 through November 2, 2021, and continuing if McKeon's discovery establishes further Honeywell retail sales after November 2, 2021;

2) PERMITS only McKeon to engage in discovery against Honeywell regarding the retail sales data, and will sign a reasonable protective order. The Court REJECTS Honeywell's request for discovery against McKeon;

32

3) ORDERS Honeywell to DISGORGE to McKeon the full profits received from its online retail sales made in violation of the Consent Order between March 21, 2012 and November 2, 2021, and thereafter, if such Honeywell retail online sales occurred after November 2, 2021; and

4) AWARDS McKeon, the injured party, reasonable attorney fees and costs, to be determined by the Court.

IT IS SO ORDERED.

Dated: February 9, 2022

s/Paul D. Borman
Paul D. Borman
United States District Judge

33